EXHIBIT A

2022 WL 972629
Only the Westlaw citation is currently available.
United States District Court, W.D. Virginia,
Roanoke Division.

John DOE, Plaintiff
v.
VIRGINIA POLYTECHNIC INSTITUTE,
AND STATE UNIVERSITY, et al., Defendants

Civil Action No. 7:21-CV-378
|
Signed 03/29/2022
|
Filed 03/30/2022

**Attorneys and Law Firms**

Robert Edwin Dean, II, Rob Dean Law, Roanoke, VA, for Plaintiff.

Katherine Cabell Londos, Nathan Henry Schnetzler, Frith Anderson & Peake PC, Roanoke, VA, Kay Kurtz Heidbreder, Kristina Julia Hartman, Marvin Hudson McClanahan, Stephen Frederick Capaldo, University Legal Counsel, Virginia Polytechnic, Blacksburg, VA, for Defendants.

## MEMORANDUM OPINION

Michael F. Urbanski, Chief United States District Judge

*1 Pending before the court is plaintiff John Doe's motion for leave to proceed under a pseudonym and for a protective order prohibiting defendants from disclosing his identity. ECF No. 2. Defendants filed a response, ECF No. 28, and the court heard argument on December 14, 2021. Having considered the pleadings and argument, the court **GRANTS** without prejudice Doe's motion to proceed under a pseudonym and enters a protective order prohibiting defendants from disclosing his identity.

### I. Background

Plaintiff John Doe was a graduate student at Virginia Polytechnic Institute and State University (Virginia Tech) pursuing a doctoral degree in physics. In late 2019, a female student accused Doe of making unwanted sexual advances toward her. Doe adamantly disputed the allegations and claimed that he met the student on a dating app and had a consensual relationship with her. The female student met with a Title IX investigator and initially requested only that Doe be ordered not to contact her. Approximately three months later, the female student initiated a formal complaint against Doe. On February 17, 2020, Virginia Tech informed Doe that he was under investigation for sexual assault and the next day he was placed on interim suspension pending a student conduct hearing. On March 3, 2020, Doe met with defendant Tamara Cherry-Clarke who told him he had been accused of violating six of Virginia Tech's policies on intimate partner contact. On March 5, 2020, Cherry-Clarke told Doe that his hearing would take place the next day. Doe requested an extension, explaining that he did not have enough time to prepare for the hearing and collect evidence in order to adequately defend himself, but Cherry-Clarke denied Doe's request, asserting that 24 hours was enough time to prepare. On March 6, 2020, Doe's student conduct hearing proceeded, and on March 9, 2020, Virginia Tech found Doe responsible for sexual assault and dismissed him from the university. Doe appealed the decision to the Dean of Student Affairs, but his appeal was denied.

These facts form the basis of a procedural due process claim filed by Doe as part of a lawsuit he has filed against Virginia Tech. As relief, Doe seeks monetary damages, as well as injunctive relief in the form of expunction of records related to the sexual assault charge and his dismissal from the university. The lawsuit also includes a claim for violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq., but Doe does not seek to proceed under a pseudonym based on the facts underlying that cause of action.

### II. Discussion

The test for deciding if a plaintiff should proceed anonymously is whether he "has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.' " Doe v. Frank, 951 F.2d 320, 323 (11th Cir. 1992) (quoting

Doe v. Stegall, 653 F.2d 180, 186 (5th Cir. Unit A Aug. 1981)). The presumption of openness is firmly rooted in American law. Doe 1 v. Merten, 219 F.R.D. 387, 390 (E.D. Va. 2004). Courts have long held that the First Amendment protections of freedom of speech and press safeguard the public's right to attend trials, which must be "open to the public absent an overriding and clearly articulated interest to the contrary." Id. at 390-91 (quoting Richmond Newspapers, Inc., v. Virginia, 448 U.S. 555, 576 (1980)). Indeed, anonymity is not contemplated by the Federal Rules of Civil Procedure. Rule 10(a) states: "[t]he title of the complaint must name all parties." The purpose of this rule "is to 'apprise the parties of their opponents and to protect the public's legitimate interest in knowing all the facts and events surrounding court proceedings.' " Doe v. Hallock, 119 F.R.D. 640, 643 n. 1 (S.D. Miss. 1987) (quoting Free Market Comp. v. Commodity Exch., Inc., 98 F.R.D. 311, 312 (S.D.N.Y. 1983)). Public access to a plaintiff's name "is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings." Stegall, 653 F.2d at 185 (citing Richmond Newspapers, 448 U.S. 555).

*2 However, the presumption of openness is not absolute and anonymity may be appropriate in some cases. The crucial interests served by open judicial proceedings are not compromised by allowing a party to proceed anonymously. Id. If a plaintiff is granted leave to proceed under a pseudonym, the public is not denied its right to attend the proceedings or inspect the court's opinions and orders on the underlying constitutional issue. Doe v. Barrow Co. Georgia, 219 F.R.D. 189, 193 (N.D. Ga. 2003); Stegall, 653 F.2d at 185. "[T]he only thing potentially being shielded from the public is plaintiff's name and any court proceedings or opinions that might be necessary to determine standing." Barrow, 219 F.R.D. at 193.

Nevertheless, it is the exceptional case in which a court allows a party to proceed anonymously. James v. Jacobson, 6 F.3d 233, 238 (4th Cir. 1993). The Fourth Circuit advises that "when a party seeks to litigate under a pseudonym, a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." Doe v. Pub. Citizen, 749 F.3d 246, 274 (4th Cir. 2014).

Allowing a party to proceed anonymously is a discretionary determination made by the trial court. In James, the Fourth Circuit set out five factors courts are to consider when deciding whether to allow a party to proceed anonymously.

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and, relatedly, [5] the risk of unfairness to the opposing patty from allowing an action against it to proceed anonymously.

Id., 6 F.3d at 238, (internal citations omitted). "Not all of these factors may be relevant to a given case, and there may be others that are." Doe v. Virginia Polytechnic Inst. & State Univ., No. 7:19-CV-00249, 2020 WL 1287960, at *3 (W.D. Va. Mar. 18, 2020).

The first James factor requires the court to determine whether the party seeking to proceed anonymously is merely trying to avoid the annoyance and criticism that may attend any litigation rather than trying to preserve privacy in a matter of a highly sensitive and personal nature. In this case, Doe was accused and found responsible by Virginia Tech of some form of sexual assault against an unnamed female student. Doe has maintained that he and the female student were engaged in a consensual relationship, and he points out that he was never charged with a crime in relation to her allegations. He is concerned about his academic and professional reputation should he not be allowed to proceed anonymously. The court agrees with Doe that an allegation of sexual assault or abusive

dating conduct involves sensitive and highly personal facts that can invite harassment and ridicule. Id., 2020 WL 1287960 at *3. Moreover, if this case survives the pending motion to dismiss, the allegations are likely to shine a light on details of his and the female student's private lives. The court finds that this factor weighs in favor of allowing Doe to proceed anonymously.

The second James factor directs the court to look at whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties. Doe has already sought mental health counseling related to the accusations made against him which he has found to be extremely upsetting. Were his identity known, he could be subject to harassment and ridicule via social media as well as by persons with whom he comes into contact in his daily life. Also, having Doe's name appear publicly increases the chances that the identity of the female student will become known as well, subjecting her to unwanted scrutiny, harassment, and ridicule. The court finds that this factor weighs in favor of allowing Doe to proceed anonymously.

*3 The third factor, which asks the court to consider the ages of the person whose privacy interests are sought to be protected, weighs neither in favor nor against allowing Doe to proceed anonymously. This factor is considered crucial when a party is underage. See e.g., Stegall, 653 F.2d at 186 (finding fact that plaintiffs were children especially persuasive in deciding whether they could proceed via pseudonym); Doe v. Santa Fe Indep. Sch. Dist., 933 F.Supp. 647, 651–52 (S.D. Tex. 1996) (refusing to protect the identities of adult plaintiffs "who are simply not as vulnerable as schoolchildren to social and physical intimidation or violence centered around events at public schools").

At the hearing held in this matter, the parties discussed the fact that Doe is in his mid-twenties, as opposed to being underage. While an underage person may have a greater need for anonymity than an adult, given the nature of the accusation against Doe, the court does not find age to be a deciding factor in this case. Moreover, the age of the female student who made the accusation against Doe is unknown. As stated above, identifying Doe increases the chances that the female student also will be identified and if she was a minor or very young adult when she filed her complaint against Doe, identifying him could bring unwanted attention to her. On balance, the court finds Doe's age to be a neutral factor in deciding whether he should proceed under a pseudonym.

The court also finds that the fourth James factor, the fact that Doe has filed this lawsuit against a public university, is neutral regarding whether he should be allowed to proceed anonymously. "When a plaintiff challenges the government or government activity, courts are more likely to permit plaintiffs to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing." Yacovelli v. Moeser, No. 1:02CV596, 2004 WL 1144183, at *8 (M.D.N.C. May 20, 2004) (citing Doe v. Harlan County Indep. Sch. Dist. 96 F. Supp.2d 667, 671 (E.D. Ky. 2000)). This is because most suits against government entities typically involve no injury to the government's "reputation." When a plaintiff alleges that a private party has violated federal law, "basic fairness dictates that those among the defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names." S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe, 599 F.2d 707, 713 (5th Cir. 1979). But see Public Citizen, 749 F.3d at 274 citing Doe v. Megless, 654 F.3d 404, 411 (3rd Cir. 2011) (finding, in a case involving a manufacturing company suing to enjoin the Consumer Product Safety Commission from publishing an online report attributing the death of a child to the company's product, that public interest is heightened when defendants are public officials and government bodies).

In this case, although Doe names individual defendants, he is suing them only in their official capacities. In Doe v. Alger, 317 F.R.D. 37, 41 (W.D. Va. March 31, 2016), the court noted that when university officials are sued in their official capacities, some observers might read the allegations in the lawsuit as accusing the individuals of wrongdoing, while others would read the allegations as challenging the university's disciplinary process itself rather than the named defendants. The same is true here, and the court finds that this factor weighs neither in favor nor against allowing Doe to proceed using a pseudonym.

Regarding the fifth factor, whether allowing Doe to proceed anonymously is unfair to defendants, the court finds that at this stage of the proceedings it is not. As Doe points out, defendants are well aware of his identity, and in their response to his motion they described no unfairness that will result if he is allowed to proceed anonymously. Accordingly, the court

finds that this factor weighs in favor of allowing Doe to use a pseudonym in this litigation.

*4 Finally, the court returns to the Fourth Circuit's broad admonition that the court must balance Doe's stated interest in anonymity against the public's interest in openness. Public Citizen, 749 F.3d at 274. The court recognizes that issues surrounding the way in which colleges and universities address allegations of sexual assault and date rape, and in turn, how courts address lawsuits arising out of the handling of such accusations, are of great interest to the public. However, the court finds that because the public has access to the docket in this case, and can read the pleadings, opinions, and orders and attend hearings, the personal and sensitive nature of the allegations against Doe and the potential for details of the investigation becoming part of this litigation outweigh the need for the public to know his identity at this time. Doe is seeking injunctive relief to expunge the allegations of sexual misconduct from his record. If his identity in this lawsuit is disclosed, it will greatly undermine any relief to which he may be entitled.

For the above-stated reasons, the court **GRANTS without prejudice** Doe's motion to proceed under a pseudonym and his motion for a protective order prohibiting defendants from disclosing his identity. Should circumstances change such that the balance of factors shifts in favor of disclosure of Doe's identity, the court will revisit this issue.

An appropriate order will be entered.

It is so **ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 972629

---

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

Painter v. Doe, Not Reported in Fed. Supp. (2016)
2016 WL 3766466

2016 WL 3766466
Only the Westlaw citation is currently available.
United States District Court, W.D. North Carolina,
Charlotte Division.

Gregory Todd PAINTER Jr., Plaintiff,
v.
Jane DOE; et al., Defendants.

CIVIL ACTION NO. 3:15-CV-369-MOC-DCK
|
Signed July 12, 2016
|
Filed 07/13/2016

**Attorneys and Law Firms**

James Bradley Smith, Paul A. Tharp, Arnold & Smith, PLLC, Charlotte, NC, for Plaintiff.

Paul Anthony Daniels, Oxner Permar + Richardson PLLC, Greensboro, NC, Rebecca K. Lindahl, Katten Muchin Rosenman LLP, Charlotte, NC, Catherine Faith Jordan, NC Department of Justice, Raleigh, NC, Gill Paul Beck, Sr., United States Attorneys Office, Asheville, NC, for Defendants.

### ORDER

David C. Keesler, United States Magistrate Judge

**\*1 THIS MATTER IS BEFORE THE COURT** on Defendant Doe's "Emergency Motion To Seal Document" (Document No. 46) filed February 1, 2016; Defendant Jane Doe's "Motion To Proceed Under a Fictitious Name" (Document No. 49) filed February 2, 2016; and Defendant Doe's "Emergency Motion To Seal The Docket" (Document No. 50) filed February 2, 2016. These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and immediate review is appropriate. Having carefully considered the motions and the record, and applicable authority, the undersigned will grant in part and deny in part the motions.

### FACTUAL BACKGROUND

Plaintiff was a student at the University of North Carolina at Charlotte ("UNC Charlotte") when he joined the North Carolina Army National Guard. (Document No. 28, p. 5). Plaintiff knowingly joined a combat-arm military occupational specialty unit that was set to deploy to Iraq in December 2008. Id. Plaintiff deployed for active duty in Iraq in December 2008, returning to the United States in April 2010. Id. Upon his return, Plaintiff re-enrolled at UNC Charlotte and began attending classes in the fall of 2010. Id. He became involved in the Reserve Officer Training Corps ("ROTC") program, and began taking steps to establish a chapter of the Pershing Rifles, a military fraternity, at UNC Charlotte. Id.

Plaintiff met Defendant Jane Doe ("Defendant" or "Doe") during the 2011-2012 school year when Defendant enrolled in ROTC courses at UNC Charlotte. (Document No. 28, p. 6). Defendant joined the Pershing Rifles fraternity, and through the fraternity pledging process, worked closely and became friendly with Plaintiff. Id. The two became social friends and communicated with each other over the telephone and over social media. Id. On the evening of May 13, 2012, Defendant contacted Plaintiff to say she was "bored," and Plaintiff responded that he was watching a movie at his apartment near the UNC Charlotte campus and invited Defendant to join. Id. Defendant arrived at the apartment, and the pair watched a movie together in the living room. Id. at pp. 6-7. That night, Plaintiff and Defendant engaged in sexual intercourse. Id. at p. 7.

Plaintiff was scheduled to study abroad during the summer of 2012, but before departing, he received an email from Defendant McGinnis, the Chair of the Military Science Department at UNC Charlotte, ordering Plaintiff to appear in his office the next day. (Document No. 28, pp. 3, 9). When Plaintiff appeared in Defendant McGinnis' office, he informed Plaintiff that he would not be allowed to go on the study abroad trip because Defendant had accused him of sexual assault, and that Plaintiff needed to be present for questioning. Id. On June 6, 2012, the incident was reported to the University of North Carolina at Charlotte Police and Public Safety. Id. at p. 11. Further, on June 7, 2012, Defendant filed a sexual assault complaint with the Charlotte-

Case 2:25-cv-00732-SDW-CLW   Document 7-2   Filed 02/19/25   Page 8 of 12 PageID: 79
For Educational Use Only

Painter v. Doe, Not Reported in Fed. Supp. (2016)
2016 WL 3766466

Mecklenburg Police Department, which ultimately led to an inconclusive investigation due to insufficient evidence. Id. at p. 10.

**\*2** On August 13, 2012, UNC Charlotte held a hearing before the Administrative Judicial Board to determine whether Plaintiff was responsible for committing sexual acts without Defendant's consent. Id. at p. 13. The evidentiary hearing (the "Hearing") was conducted in a closed session, and the administrators announced at the beginning of the Hearing that disclosure of the details of the Hearing was a violation of both UNC Charlotte rules and federal law. (Document No. 46 at p. 3). The Hearing was transcribed by a court reporter into a 54-page transcript (the "Transcript") which contained explicit sexual, personal, and sensitive testimony from both Plaintiff and Defendant. (Id. at p. 1). The Board ultimately found Plaintiff responsible for "Committing Sexual Acts without Consent." (Document No. 28, p. 14). Plaintiff was reprimanded by the school, and was subject to disciplinary measures including a no-contact order with Defendant, suspension from school, loss of standing in the ROTC, and a writing assignment on the complexities of consent. Id. at pp. 15-17.

On August 21, 2012, Plaintiff appealed the decision of the Hearing Committee, arguing that the presented evidence failed to sufficiently establish that it was more likely than not that Plaintiff had committed sexual acts upon Defendant without the latter's consent. Id. at pp. 17-18. On August 24, 2012, Plaintiff was notified that his appeal was denied. Id. Plaintiff appealed again, arguing that Rinck, a student in whom Defendant Doe was alleged to have a romantic interest, had encouraged Defendant to label the sexual intercourse as "rape" and to report it, amongst other allegations. Id. at p. 19.

A second disciplinary hearing was held in Plaintiff's case on March 22, 2013. Id. at p. 21. The hearing upheld the initial finding that Plaintiff was responsible for engaging in sexual acts without Defendant's consent. (Document No. 28, p. 23). Again, Plaintiff appealed the Board's decision, which appeal was denied. Id. at pp. 23-24. Ultimately, Plaintiff graduated from UNC Charlotte in 2013. Id. at 25. Plaintiff is currently a Senior Network Engineer with Cisco and continues to serve in an enlisted capacity within the North Carolina Army National Guard. Id. However, Plaintiff alleges that as a result of all Defendants' actions and omissions during the Hearing, his Government clearance has been flagged and this has stopped him from pursuing a career with the government or military. Id.

## PROCEDURAL BACKGROUND

Plaintiff initiated this action against UNC Charlotte, its Board of Governors, and Defendant on August 12, 2015. (Document No. 1). Plaintiff alleges five causes of action: (1) denial of due process under the Fourteenth Amendment during UNC Charlotte's Judicial Board Hearing which ultimately found him responsible for sexually assaulting Defendant; (2) violation of substantive due process under the Fourteenth Amendment; (3) violation of the equal protection clause of the Fourteenth Amendment; (4) violation of Title IX provisions against gender discrimination; and (5) common law fraud by Defendant. (Document No. 28, pp. 25-29). He also asserts a claim for gender discrimination under 20 U.S.C. § 1681 ("Title IX").

Defendant filed her "Emergency Motion to Seal" in order to prevent disclosure of the Transcript of the disciplinary hearing held at UNC Charlotte on August 13, 2012 (the "Transcript"). (Document No. 46). Defendant argues that the Family Educational Rights and Privacy Act ("FERPA") provides evidence of a compelling government interest to keep student educational records private, which overcomes the presumption that court records should be made public. Id. at 3. In opposition, Plaintiff argues that the Transcript is part of his educational records, not Defendant's records, and FERPA does not provide a mechanism in this situation to seal court documents. (Document No. 55, p. 6). Defendant Doe submitted a reply to Plaintiff's opposition brief, arguing that the Transcript is part of both students' educational records, and that Plaintiff cannot waive Doe's right to privacy. (Document No. 60, p. 2).

**\*3** Defendant filed her "Motion To Proceed Under a Fictitious Name," ("Jane Doe") in order to preserve her privacy on a matter of a sensitive and highly personal nature, as well as claiming an interest in preventing retaliation. (Document No. 49; Document No. 49-1, pp. 5-10). Plaintiff filed a brief in opposition on February 15, 2016. (Document No. 56). Defendant Doe submitted a reply brief on February 19, 2016. (Document No. 59).

Case 2:25-cv-00732-SDW-CLW   Document 7-2   Filed 02/19/25   Page 9 of 12 PageID: 80
For Educational Use Only

Painter v. Doe, Not Reported in Fed. Supp. (2016)
2016 WL 3766466

Finally, Defendant filed her "Motion To Seal The Docket" on February 2, 2016, asking to temporarily seal the docket while her motion to proceed under a fictitious name is pending before the Court. (Document No. 50). Plaintiff submitted his brief in opposition to the motion on February 16, 2016. (Document No. 57). Defendant submitted a reply brief on February 16, 2016. (Document No. 58).

Having each been fully briefed, the motions described herein are now ripe for disposition.

## STANDARD OF REVIEW

When a judicial document or record sought to be sealed is filed in connection with a dispositive motion, the public's right of access to the document in question arises under the First Amendment. Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 252-53 (4th Cir. 1988). Where the First Amendment provides a right of access to a document, a district court may restrict access and seal the documents if there is a showing that: (1) the denial serves a compelling government interest, and (2) the denial is "narrowly tailored to serve that interest." Va. Dep't of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004) (quoting Stone v. University of Maryland Medical System Corp., 855 F.2d 178, 180 (4th Cir. 1988)).

If a judicial document meets the substantive standards explained above, the Fourth Circuit also requires that the procedural standards for excision also be met. See In re Knight Pub. Co., 743 F.2d 231, 235 (4th Cir. 1984). Under Knight, a district court must give the public adequate notice that the sealing of documents may be ordered. Id. Then, the district court must provide for an opportunity for persons to object to the request before the court renders its decision. Id. The court must also consider less drastic alternatives to sealing. Id. Finally, if the district court decides to seal documents, the court must state its reasons on the record, supported by specific factual findings. Id.

The Federal Rules of Civil Procedure require that the identities of all parties in a case be disclosed. See Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."). Allowing parties to proceed anonymously in litigation is rare, as it "undermines the public's right of access to judicial proceedings." Doe v. Public Citizen, 749 F.3d 246, 273 (4th Cir. 2014).

Although generally there is a presumption of openness in judicial proceedings, there can be occasions in which the concerns of a party seeking anonymity outweigh the general presumption of openness. James v. Jacobson, 6 F.3d 233, 242 (4th Cir. 1993). While there is no recognized legal right to anonymity, courts have the power to grant it where appropriate. The Fourth Circuit has identified five nonexclusive factors to consider when evaluating a request to proceed in trial under a pseudonym:

> whether the justification asserted by the requesting party is merely to avoid the annoyance that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or, even more critically, to innocent non-parties; the ages of the persons whose privacy interests are sought to be protected; whether the action is against a governmental or private party; and relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*4 Jacobson, 6 F.3d at 238 (internal citation omitted). Privacy concerns of embarrassment are valid, but do not weigh as heavily as in other circumstances involving more serious risk of disclosure of more intimate personal information. Doe v. North Carolina Central University, 1999 WL 1939248 *1 (M.D.N.C. 1999).

## DISCUSSION

In short, the undersigned finds Defendant's arguments for sealing the Transcript of the Hearing, and her motion to proceed under the fictitious name "Jane Doe," to be

Painter v. Doe, Not Reported in Fed. Supp. (2016)
2016 WL 3766466

convincing. (Document Nos. 46, 49, 49-1). Under the circumstances, Defendant Doe's "Emergency Motion to Seal The Docket" will be denied as moot. (Document No. 50). The undersigned will discuss each of these motions in turn.

### A. Motion to Seal the Transcript of School Disciplinary Hearing

In her "Motion to Seal," Defendant argues that the public has no First Amendment right to view the transcript of the Hearing. (Document No. 46 pp. 2-4). She first argues that the Family Educational Rights and Privacy Act ("FERPA") strongly indicates there is a compelling government interest in restricting access to the Hearing Transcript. (Document No. 46, p. 3) (citing Univ. of N.C. at Chapel Hill v. Jennings, 340 F. Supp. 2d 666, 679 (M.D.N.C. 2004), affirmed in part 444 F.3d 255 (4th Cir. 2007), rehearing en banc 482 F.3d 686 (4th Cir. 2007) (affirming in part, vacating in part, remanded), cert. denied 552 U.S. 887 (2007)). FERPA prevents institutions that receive federal funding from releasing a student's educational records without that student's consent. 20 U.S.C. § 1232g(b)(1). Defendant contends that Plaintiff does not have a FERPA exception permitting him to release Defendant's educational records without consent. (Document No. 46, p. 3).

Defendant also notes that district courts in the Fourth Circuit have found that redaction or sealing of information related to alleged sexual abuse victims serves a compelling government interest. (Document No. 46, p. 4) (citing Alexander v. City of Greensboro, 2013 WL 6687248 at *5 (M.D.N.C. Dec. 18, 2013); Wilmink v. Kanawha Cnty. Bd. of Educ., 2006 WL 456021 at *3 (S.D.W. Va. Feb. 23, 2006)).

Plaintiff opposes Defendant's motion, arguing that the Transcript is part of his educational records, not the Defendant's records, and FERPA does not provide a mechanism in this situation to seal court documents. (Document No. 55, p. 6). Additionally, Plaintiff argues that the cases cited by the Defendant do not support her claim of a compelling interest sufficient to warrant sealing the Transcript. (Document No. 55, pp. 7-9). Specifically, Plaintiff argues that Alexander is not relevant because the case involved maintaining the confidentiality of police informants, and Wilmink involved a Plaintiff who had been a minor at the time of the offense and filed suit nearly two decades later. (Document No. 55, pp. 7-8).

The undersigned finds that Defendant has a compelling interest in having her private educational records protected, as provided by FERPA. The Transcript, which details the disciplinary judicial process at UNC Charlotte between Plaintiff and Defendant, is kept by UNC Charlotte. Thus, under the FERPA definition of "education record," see 20 U.S.C. § 1232g(a)(4)(A), the Transcript constitutes an education record which is protected from unauthorized disclosure. Furthermore, disciplinary records are education records of both the accused student and the victim of the alleged crime, so long as the victim is also a student of the university. Miami Univ., 91 F.Supp.2d 1132, 1149 (S.D. Ohio 2000) affirmed 294 F.3d 797 (6th Cir. 2002). Defendant has made an affirmative request that the court seal an education record that was filed without her consent. (Document No. 46). The undersigned is satisfied that FERPA provides a compelling interest in protecting the privacy of student records in this instance. Id. at 1158 ("[t]he citizenry does not possess a First Amendment right of access to the disciplinary records of public universities.").

*5 The undersigned also finds that Defendant has narrowly tailored her request to seal the Transcript. (Document No. 46). Defendant does not request the Transcript be stricken from the record. Id. Rather, she seeks that the Transcript not be accessible to the public. Id. Such sealing to prevent public disclosure will not affect Plaintiff's ability to rely on the Transcript in court proceedings; nor will it affect his ability to utilize the Transcript to verify the date of the disciplinary proceeding.

Further, Defendant's request meets the procedural standards set forth in Knight. In re Knight Pub. Co., 743 F.2d at 235. The first Knight factor analyzes whether there has been public notice of a request to seal and a reasonable opportunity to challenge the motion. Id. Defendant Doe's Motion to Seal was filed within 24 business hours of Plaintiff's disclosure of the Transcript, and Plaintiff responded with his Brief in Opposition to Defendant's motion. (Document Nos. 44, 46, 55). The filing of these motions in ECF constitutes sufficient notice to the public that the court may seal the Transcript. Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 181 (4th Cir. 1984). Thus, there has been reasonable opportunity for the public to challenge the motion.

For Educational Use Only

**Painter v. Doe, Not Reported in Fed. Supp. (2016)**
2016 WL 3766466

The second Knight factor directs the undersigned to consider less drastic alternatives to sealing. In re Knight Pub. Co., 743 F.2d at 235. Plaintiff argues that not only does he rely on the Transcript to establish the date of the proceeding, but he also claims that the Transcript is necessary for evidence to prove his due process rights were violated during the proceeding. (Document No. 55, pp. 3-6). Without access to the Transcript in its entirety, he would not have the ability to pinpoint the alleged flaws of the proceeding. Id. Defendant argues that the Transcript contains sensitive information which should be sealed from the public, or at a minimum substantially redacted to permit only the disclosure of the date of the Hearing. (Document No. 46 at p. 5). In fairness to both parties, the undersigned determines that the sealing of the Transcript is the least drastic option. Sealing the Transcript allows Plaintiff the ability to rely on the procedural information in his claim that his due process was violated. Further, sealing the document affords Defendant her privacy under FERPA. Severely redacting or totally striking the Transcript appear more serious alternatives that could potentially undermine Plaintiff's claims, and the undersigned will not take such action at this time.

Finally, the last Knight element requires the undersigned to state the reasoning for deciding to seal, supported by specific findings and reasons for rejecting alternatives to sealing. As noted above, the undersigned decides to seal the Transcript because it is an education record of Defendant that is protected under FERPA. The undersigned observes that at the outset of the hearing it was described as a "confidential proceeding" held in "closed session." (Document No. 44-2, p. 3) (citing FERPA). Additionally, Plaintiff requested the Hearing be closed pursuant to FERPA. (Document No. 44-2, p. 4). Further, the Transcript was filed publically without Defendant's consent, and she has made an affirmative request to have the Transcript sealed from the public as it contains personal information regarding an alleged sexual assault. There is no less strict alternative that would afford both Plaintiff and Defendant equal protection to privacy as contemplated by FERPA. By sealing the Transcript, Plaintiff may rely on its information for the duration of this litigation, while Defendant will not be publically victimized by the refusal to recognize her right to privacy under FERPA.

*6 The undersigned is satisfied that the Defendant has demonstrated a compelling interest in protecting the privacy of student records, evidenced by the letter and spirit of FERPA, narrowly tailored her request to seal, and satisfied the Knight factors. Accordingly, the undersigned will order that the Transcript of the Hearing be sealed.

### B. Motion to Proceed Under the Fictitious Name "Jane Doe"

Defendant next moves to proceed with the case under the fictitious name, "Jane Doe." (Document No. 49). The undersigned will apply the Jacobson factors to determine if Defendant's motion should be granted.

First, this litigation pertains to "a matter of sensitive and highly personal nature," as it concerns an alleged sexual assault by the Plaintiff on Defendant Doe. Jacobson, 6 F.3d at 238. Sexual misconduct is a subject matter sufficiently sensitive and personal to satisfy this factor. See, e.g., Doe v. Alger, 2016 WL 1273250 (W.D. Va. Mar. 31, 2016) (allowing both the alleged perpetrator and victim of sexual assault that was decided by James Madison University's hearing board to proceed in federal litigation under fictitious names). This court believes that application of the first Jacobson factor favors anonymity in this case.

Second, identification of Defendant Doe poses a risk of retaliatory harm. Jacobson, 6 F.3d at 235. In this case, Defendant Doe claims that if she is not allowed to proceed anonymously, then she will suffer mental harm by being "re-victimized" by Plaintiff with her legal name appearing on a public docket revisiting the details of the alleged sexual assault. (Document No. 49, p. 8). Further, Defendant Doe notes that she pursued her case through the UNC Charlotte judicial proceeding, which both she and Plaintiff believed to be a confidential setting. (Document No. 46, p. 2).

Plaintiff brings his case against UNC Charlotte and Defendant Doe based on how the UNC Charlotte case was conducted. (Document No. 28, pp. 25-29). As Defendant Doe argues that she is an unwilling litigant, it is further unpersuasive to disallow Defendant Doe from proceeding under a fictitious name because UNC Charlotte allegedly failed to afford Plaintiff proper due process, leaving him with no other alternative than to seek redress in federal court. (Document No. 59 at pp 8-9); See Doe v. The Rector & Visitors of George Mason Univ., 2016 WL 1574045, at *7 (E.D. Va. Apr. 14, 2016) (allowing former student to proceed under a pseudonym in federal litigation against state university

**Painter v. Doe, Not Reported in Fed. Supp. (2016)**
2016 WL 3766466

alleging his due process was infringed when he was expelled in a university judicial proceeding for sexual misconduct). The undersigned therefore believes that the second factor also weighs in favor of allowing Defendant Doe to proceed anonymously.

Third, the age of the Defendant does not add additional weight in favor of proceeding under a fictitious name, as both parties were legal adults at all relevant times of the case. (Document No. 49, p. 6).

Fourth, the fact that Plaintiff is a private party weighs against Defendant proceeding under a fictitious name. When a plaintiff challenges the government, courts are more likely to allow him or her to proceed under a pseudonym than in cases involving private parties, since actions against private individuals may harm their reputations. See, e.g., Doe v. Pittsylvania Cnty., Va., 844 F.Supp.2d 724, 730 (W.D. Va. 2012).

*7 Fifth, there is no risk of unfairness to the Plaintiff if Defendant is allowed to proceed as Jane Doe. In this case, Plaintiff argues that allowing Defendant Doe to proceed anonymously will impose unfairness on him as she made the sexual assault allegations against him publically and should not be allowed to use anonymity as a shield against public scrutiny. (Document No. 56 at p. 13). Both Plaintiff and Defendant Doe cite to Doe v. N.C. Central Univ., 1999 WL 1939248 (M.D.N.C. 1999), a North Carolina case about an employee of North Carolina Central University who alleged her supervisor sexually assaulted her. Id. The Doe v. N.C. Central Univ. court refused to allow the plaintiff to proceed on her claim anonymously because she made her sexual assault allegations publically by voluntarily choosing to bring the lawsuit in federal court; in addition, her attorney gave several statements to the media regarding the case and charges against the defendant. Id. at *4.

The facts presented here are distinguishable from Doe v. N.C. Central Univ., as Plaintiff is the party who voluntarily brought the current action against Defendant Doe. Furthermore, Defendant Doe brought her claim of sexual assault to the UNC Charlotte administration, and sought relief through a closed, confidential school adjudication. As such, the fifth factor weighs in favor of anonymity because Defendant did not choose to be involved in this litigation.

The undersigned concludes that application of the Jacobson factors weighs in favor of Defendant. The sensitive nature of the issues in dispute in this case, the risk of retaliatory harm, and the fact that Defendant is an unwilling litigant in this case provide sufficient grounds to allow Defendant to proceed under a fictitious name. Accordingly, the undersigned will order that Defendant proceed in the case as "Jane Doe."

### C. Motion to Seal the Docket

Finally, Defendant argues that the Court should seal the docket temporarily for 48 hours following the filing of the motion to allow consideration of the motion to proceed under a fictitious name. (Document No. 50, p. 1). Given that the undersigned has reached a conclusion regarding Defendant Doe's motion to proceed under a fictitious name, Defendant's motion is now moot.

### CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Defendant Jane Doe's Motion To Seal" (Document No. 46) is **GRANTED**. Exhibit 2 of "Plaintiff's Brief In Opposition To Defendants' Motion To Dismiss" (Document No. 44-2) is hereby **SEALED**.

**IT IS FURTHER ORDERED** that "Defendant Jane Doe's Motion to Proceed Under a Fictitious Name" (Document No. 49) is hereby **GRANTED**. Defendant shall proceed under the name, "Jane Doe."

**IT IS FURTHER ORDERED** that "Defendant Doe's Motion to Seal Docket" (Document No. 50) is hereby **DENIED AS MOOT**.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3766466

© 2025 Thomson Reuters. No claim to original U.S. Government Works.