UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF NEWARK

| | |
|---|---|
| COURTNEY TAMAGNY AND JEANNE TAMAGNY, | Hon. Susan D. Wigenton, U.S.D.J. Hon. Cathy L. Waldor, U.S.M.J. |
| Plaintiffs, | Docket No.2:25-cv-00732 (SDW-CLW) |
| v. | |
| DIVISION OF CHILD PROTECTION AND PERMANENCY, et al., | Electronically Filed |
| Defendants. | |

_____

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

_____

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625
Attorney for Defendants, State of New Jersey, State of New Jersey Department of Children and Families, Division of Child Protection and Permanency, Bergen County Prosecutor's Office, Christine Norbut-Beyer and Joanna Holota

By:  Marvin L. Freeman
     Deputy Attorney General
     (609) 376-2440
     marvin.freeman@law.njoag.gov

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................2

Plaintiff's Amended (the Operative) Complaint........................................3

The Underlying Allegations of Sexual Abuse ..........................................3

Allegations Against the State Defendants ................................................6

Causes of Action in Counts 1 through 12 of the Amended Complaint ....................7

    Count I ................................................................................7

    Count 2................................................................................8

    Count 3 ...............................................................................9

    Count 4................................................................................9

    Count 5 Assault and Battery Only Against Defendants Scott Tamagny and Scott Slevin ................................................................10

    Count 6 - Incestuous Abuse Only Against Defendants Scott Tamagny and Keith Slevin ................................................................11

    Count 7 - Intentional Infliction of Emotional Distress and Count 8, Negligent Infliction of Emotional Distress Only Against Defendants Scott Tamagny and Keith Slevin ................................................11

    Count 9 - Breach of Parental Duty Only Against Defendant Scott Tamagny ................................................................12

    Count 10 - False Imprisonment and Count 11, Invasion of Privacy, and Count 12, Transportation of Minors Only Against Defendants Scott Tamagny and Keith Slevin ................................................12

STANDARDS OF REVIEW ....................................................................................13

    A. Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) ...............................................................................................13

    B. Failure to State a Claim Pursuant to *Fed. R. Civ. P.* 12(b)(6) .......................14

ARGUMENT

    POINT I

        ELEVENTH AMENDMENT SOVEREIGN IMMUNITY BARS ALL FEDERAL AND STATE CLAIMS SEEKING MONETARY DAMAGES AND/OR EQUITABLE RELIEF ............15

    POINT II

        ALL CLAIMS AGAINST THE STATE, STATE AGENCIES AND ALL INDIVIDUALLY-NAMED STATE DEFENDANTS IN THEIR OFFICIAL CAPACITIES SHOULD BE DISMISSED BECAUSE THEY ARE NOT PERSONS SUBJECT TO SUIT UNDER 42 U.S.C. § 1983 .............16

    POINT III

        THIS COURT SHOULD ABSTAIN FROM ISSUING DECISIONS AFFECTING THE STATE COURT CUSTODY DETERMINATION PURSUANT TO THE *ROOKER-FELDMAN* AND/OR *YOUNGER* ABSTENTION DOCTRINE .......18

    A. Application of the *Rooker-Feldman* Doctrine Warrants Dismissal ........................................................................................19

    B. Alternatively, the *Younger* Abstention Doctrine Permits Dismissal ........................................................................................20

POINT IV

PLAINTIFF HAS FAILED TO ESTABLISH A CAUSE OF ACTION FOR CONSPIRACY TO VIOLATE HER FEDERAL OR STATE CONSTITUTIONAL RIGHTS ......................................22

POINT V

CLAIMS AGAINST DEFENDANTS CHRISTINE NORBUT BEYER AND JOANNA HOLOTA IN THEIR INDIVIDUAL CAPACITY SHOULD BE DISMISSED BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY   24

CONCLUSION ........................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*ACRA Turf Club, LLC v. Zanzuccki,*
   748 F.3d 127 (3d Cir. 2014) ...............................................................21

*Alabama v. Pugh,*
   438 U.S. 781 (1978)...........................................................................15

*A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.,*
   372 F.3d 572 (3d Cir. 2004) ...............................................................18

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011)...........................................................................26

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...........................................................................14

*Baker v. McCollan,*
   443 U.S. 137 (1979)...........................................................................28

*Banco Popular N. Am. v. Gandi,*
   876 A.2d 253 (N. J. 2005) ..................................................................23

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...........................................................................14

*Blanciak v. Allegheny Ludlum Corp.,*
   77 F. 3d 690 (3d Cir. 1996) ................................................................13

*Daniels v. Williams,*
   474 U.S. 327 (1986)...........................................................................27

*D.C. Court of Appeals v. Feldman,*
   460 U.S. 462 (1983)...........................................................................19

*Drisco v. City of Elizabeth,*
   No. 12-2111, 2013 U.S. Dist. LEXIS 175151 (D.N.J. Dec. 6, 2013) ...............24

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
   544 U.S. 280 (2005)...........................................................................19

*Fioriglio v. City of Atl. City,*
996 F. Supp. 379 (D.N.J.) 1998 ..........................................................22

*Fitchik v. New Jersey Transit Rail Operations, Inc.,*
873 F.2d 655 (3d Cir. 1989) ...............................................................16

*FOCUS v. Allegheny Cnty. Ct. of Common Pleas,*
75 F. 3d 834 (3d Cir. 1996) ................................................................20

*Fowler v. UPMC Shadyside,*
578 F.3d 203 (3d Cir. 2009) ...............................................................14

*Fuchs v. Mercer County,*
260 Fed. Appx. 472 (3d Cir. 2008)...............................................25, 27

*Garlanger v. Verbeke,*
223 F. Supp. 2d 596 (D.N.J. 2002) .....................................................24

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP,*
615 F.3d 159 (3d Cir. 2010) .........................................................19, 20

*Harley v. City of N.J. City,*
No. 16-5135, 2017 U.S. Dist. LEXIS 98808 (D.N.J. June 27, 2017) ...............23

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982)................................................................25, 26, 28

*Hunter v. Bryant,*
502 U.S. 224 (1991)............................................................................26

*ITT Corp. v. Intelnet Int'l Corp.,*
366 F. 3d 205 (3d Cir. 2004) ..............................................................20

*Ivan v. County of Middlesex,*
595 F. Supp. 2d 425 (D.N.J. 2009).................................................21, 23

*John Scott Tamagny v. Jeanne Tamagny,*
Docket Number FM 02-220-22 ............................................3, 4, 5, 6

*Kelly v. Borough of Carlisle,*
622 F.3d 248 (3d Cir. 2010) ...............................................................25

*Malhan v. Sec'y U.S. Dep't of State*,
  938 F.3d 453 (3d Cir. 2019) .......................................................................20, 21

*Malleus v. George*,
  641 F.3d 560 (3d Cir. 2009) ...............................................................................14

*McGillvary v. Union Cty.*,
  No. 15-8840, 2020 U.S. Dist. LEXIS 75909 (D.N.J. Apr. 30, 2020) ...............27

*Merkle v. Upper Dublin School Dist.*,
  2111 F.3d 782 (3d Cir 2000) ...............................................................................27

*Mitchell v. McNeil*,
  487 F.3d 374 (6th Cir. 2007) ...............................................................................27

*Mullenix v. Luna*,
  577 U.S. 7 (2015) ..................................................................................................26

*Oliveria v. Borough of N. Arlington*,
  2017 U.S. Dist. LEXIS 54343 (D.N.J. Apr. 10, 2017) ......................................17

*Orsatti v. New Jersey State Police*,
  71 F.3d 480 (3d Cir. 1995) ...........................................................................27, 28

*PBA Local No. 38 v. Woodbridge Police Dept.*,
  832 F. Supp. 808 (D.N.J, 1993) .........................................................................22

*Pearson v. Callahan*,
  555 U.S. 223 (2009) ........................................................................................25, 26

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ....................................................................................15, 16, 18

*Port Auth. Police Benevolent Assoc., Inc. v. Port Auth.*,
  973 F.2d 169 (3d Cir. 1992) ...............................................................................19

*Radiation Data, Inc. v. N.J. Dep't of Envt'l Prot.*,
  196 A.3d 579 (N.J. Super. Ct. App. Div. 2018) ...............................................26

*Reichle v. Howards*,
  566 U.S. 658 (2012) ..............................................................................................26

*Rooker v. Fidelity Trust Co.*,
263 U.S. 413 (1923) ........................................................................................... 19

*Rose v. Bartle*,
871 F.2d 331 (3d Cir. 1989) ............................................................................... 23

*Roth v. City of Hermitage*,
709 F. App'x 733 (3d Cir. 2017) ........................................................................ 27

*Saucier v. Katz*,
533 U.S. 194 (2001) ........................................................................................... 26

*Silver v. Court of Common Pleas*,
802 F. App'x 55 (3d Cir. 2020) .......................................................................... 21

*Sprint Commc'ns, Inc., v. Jacobs*,
571 U.S. 69 (2013) ............................................................................................. 21

*V.R. v. Bergen County Prosecutor's Office, et al.*,
No. 23-20605, 2024 U.S. Dist. LEXIS 149055 (D.N.J. Aug. 19,
2024) ................................................................................................................... 16

*West v. Atkins*,
487 U.S. 42 (1988) ............................................................................................. 17

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989) ....................................................................................... 15, 17

*Williams v. Dargan*,
No. 10-2367, 2011 U.S. Dist. LEXIS 10610 (D.N.J. Feb. 3, 2011) ................... 27

*Wilson v. Russo*,
212 F.3d 781 (3d Cir. 2000) ............................................................................... 28

## **Statutes**

42 U.S.C. § 1981 and 1983 ............................................................................... 7, 9

42 U.S.C. § 1981, 1983, 19985 and 1986 .............................................................. 2

42 U.S.C. § 1983 ......................................................................... 2, 16, 17, 18, 22

42 U.S.C. § 1985 (3) ........................................................................................... 22

42 U.S.C. § 1985 and § 1986 ...................................................................................8

Federal Civil Rights Act, 42 U.S.C. § 1985 ...................................................22, 23

## **Rules**

First Amendment.....................................................................................................23

Fourteenth Amendment ............................................................................7, 8, 9, 23

Fed. R. Civ. P. 12(b)(1)....................................................................................13, 14

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ...................................................................13

*Fed. R. Civ. P.* 12(b)(6)...........................................................................................14

U.S. Const. amend. XI ............................................................................................15

U.S. Constitution Fourth, Eighth and Fourteenth Amendments........9, 10, 11, 12, 13

United States Constitution Eleventh Amendment .....................1, 13, 14, 15, 16, 18

## **PRELIMINARY STATEMENT**

Plaintiffs, Courtney Tamagny and her Mother, Jeanne Tamagny, filed a twelve-count Complaint against the State, several State agencies, including the Bergen County Prosecutor's Office, her father, and a family friend, claiming certain constitutional violations against the State agencies and individuals related to sexual abuse allegedly perpetrated by the father, John Scott Tamagny and Keith Slevin, a family friend. Of twelve counts, however, only Counts One through Four are asserted against Defendants affiliated with the State, as Counts Five through Twelve are asserted against the father and/or the family friend.

The gravamen of Plaintiffs' claims against the State agencies and individual defendants is based on an alleged inadequate investigation that caused certain constitutional harms. They claim the State Defendants conducted a sham investigation that failed to adequately protect Plaintiff Courtney Tamagny from sexual abuse by her father and the family friend. They also alleged the State Defendants conspired with the father and family friend and purposely failed to conduct a thorough investigation, which deprived them of equal protection under the law.

However, the complaint should be dismissed because the Eleventh Amendment to the United States Constitution prohibits suits brought in federal courts by a State's own citizens as well as by citizens of another state against the

State. In addition, claims against the State, State entities and State officials in their officials capacity are not "persons" subject to suit under § 1983 or the NJCRA. Regarding Plaintiffs' claims of an inadequate investigation, it should also be dismissed because there is no recognized constitutional right to an adequate investigation, or any investigation. Finally, the State Defendants are entitled to qualified immunity.

## **STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]**

On January 28, 2025, Plaintiff, Courtney Tamagny, filed a complaint against the State of New Jersey, the State of New Jersey Division of Child Protection and Permanency, New Jersey Department of Children and Families, Christine Norbut Beyer, Joanna Holota, the Bergen County Prosecutor's Office, John Scott Tamagny (Plaintiff's father) and Keith Slevin (a family friend), wherein she asserted federal civil rights claims under 42 U.S.C, § 1981, 1983, 19985 and 1986.[2] (See ECF No.1). She also asserted State law claims against her father, John Scott Tamagny and the family friend, Keith Slevin, for assault and battery, incestuous abuse, intentional

---

[1] The Statement of Facts and Procedural History have been combined to avoid repetition and for ease of understanding.

[2] As noted herein, this motion is on behalf of the State of New Jersey, Division of Child Protection and Permanency ("DCP&P"), New Jersey Department of Children and Families, Christine Norbut Beyer - DCP&P Commissioner; Joanna Holota – DCP&P Investigator and the Bergen County Prosecutor's Office ("State Defendants").

infliction of emotional distress, negligent infliction of emotional distress, breach of parental duty, false imprisonment, invasion of privacy and transportation of minors. *Id.*

## Plaintiff's Amended (the Operative) Complaint

On March 19, 2025, Plaintiff filed an amended complaint (the operative complaint), wherein she added her mother, Jeanne Tamagny as an additional Plaintiff and asserted the same claims against the same Defendants. (See generally, Exhibit-A, amended complaint). Plaintiff stated she is the middle of three children of Defendant Father John Scott Tamagny and Plaintiff's Mother Jeanne Tamagny. *Id.* at ¶ 1). Plaintiff and her sister Sarah Tamagny, are fully emancipated, while their minor sister MT is age 17. *Id.* Plaintiff acknowledged her father is estranged from Plaintiff mother, Jeanne Tamagny and that Jeanne and Defendant Scott Tamagny are involved in divorce litigation in New Jersey Superior Court entitled: *John Scott Tamagny v. Jeanne Tamagny*, Docket Number FM 02-220-22. *Id.* at ¶ 11).

## The Underlying Allegations of Sexual Abuse

Plaintiff claims she was sexually abused and assaulted by Defendant Scott Tamagny and Keith Slevin while she was a minor between the ages of 4 and 15. *Id.* at ¶ 14. Plaintiff alleges her earlies memory of sexual abuse occurred when she was 4 or 5 years of age on a day when he mother was not at home. *Id.* She claims her father got into her bed without any clothes and gently rubbed her vaginal area. *Id.*

3

She alleges that on other occasions, her father entered the shower with her and showed her his penis. *Id.*

On another occasion when Plaintiff and her minor sister M.T. showered together, Defendant Scott Tamagny entered the shower with both of them, touched her vagina with his fingers and made both of them touch his penis. *Id.* When alone with her father, Plaintiff claimed he would vaginally penetrate her while in the shower and threatened to beat her or M.T. if they told anyone. *Id.* Plaintiff claims M.T. told her what her father, Defendant Scott Tamagny, did to her in the shower and Plaintiff Courtney Tamagny knew she was truthful because Scott Tamagny did the same to her. *Id* at subparagraph b.

Plaintiff Courtney Tamagny also claims to recall Defendant Scott Tamagny forcing her and her sisters to take pills, which caused her to get dizzy and lose consciousness. *Id.* at subparagraph c. She also recalls a neighboring friend of her father, Defendant Keith Slevin, sexually assaulting her with her father watching. *Id.* at subparagraph d. Plaintiff claims she recalls screaming for Defendant Slevin to stop because of the pain, but to no avail. *Id.* Plaintiff claimed further that her father and Defendant Slevin would "tag team" and sexually assault her vaginally and anally and threatened to kill her Mother, Plaintiff Jeanne Tamagny, if Plaintiff Courtney Tamagny told anyone. *Id.* at subparagraphs d, e.

4

On an occasion while in the basement of their home with both or her soblings, Plaintiff Courtney Tamagny claims she watched Defendant Scott Tamagny sexually assault M.T. by pinning M.T. to the ground and penetrating her vaginally. *Id*. at subparagraph f. Plaintiff claims her father made her watch the sexual assault and took pictures of her and M.T. Id. at subparagraphs f, g. Plaintiff claims she also has specific recollection of Defendant Scott Tamagny being home alone with her and M.P. and inserted his had under M.T.'s pants and touched her vaginal area. Id. at subparagraph h.

In support of her claim for transportation of minors, Plaintiff Courtney Tamagny claims that Defendants Scott Tamagny and Slevin would take her and her sisters, M.T. and Sarah, into the woods in Rockland County New York, where there were other middle-aged men present with masks on their faces. *Id.* There, she claims her father, Defendant Slevin and some of the other men sexually assaulted her in the woods. *Id.* She also recalls her sister M.T. being struck and M.T. not being able to run away from the men as M.T. was being vaginally penetrated with fingers or a penis and anally. *Id.*

Plaintiff Courtney Tamagny alleges when Defendant Father Scott Tamagny left the marital home, she and her sisters started having flashbacks, causing suicidal ideations. *Id.* at subparagraphs l. She claims she experienced vaginal pains and was examined by a doctor who made inquiries about sexual abuse. *Id*. at subparagraph

5

m. She also recalls her sister M..T. as having the worst flashbacks, causing her to shake, cry and hide in her closet. *Id.* Plaintiff Courtney Tamagny claims the sexual abuse stopped in 2020 when she reached 15 years if age. *Id.* at subparagraph o.

**<u>Allegations Against the State Defendants</u>**

On February 7, 2022, Plaintiff Courtney Tamagny claims a referral was made by her therapist to Defendant DCP&P about sexual abuse perpetrated by Defendant Father Scott Tamagny. *Id.* at subparagraph r. Plaintiff, then age 17, claims she shared her recalls with her therapist, who made a report. *Id.* She claims further that the claims of sexual abuse were investigated by Defendant Joanna Holota, the lead investigator for DCP&P and the BCPO. *Id.* at subparagraphs r, s. Despite the involvement of the State of New Jersey and an investigation by the BCPO, DCP&P and DCF, Plaintiff claims these Defendants took no action to protect her and her siblings. *Id.* at subparagraph s.

Plaintiff Courtney Tamagny also alleges that the State Defendants' investigation was conducted in such a manner as to deprive her and her siblings of their rights to due process and their rights to be free from harassment. To prevent this, she claims the investigation should have been conducted by specially-tained professional with experience in forensic interviews of minor children on the subject of sexual abuse. *Id.* at subparagraph t.

Regarding allegations against Defendant DCP&P Commissioner Christine Norbut Beyer, Plaintiff Courtney Tamagny claims that Beyer and Holota knew or should have known about the customs and practices of the BCPO, DCP&P and DCF to suppress and ignore child welfare reports of physical and sexual abuse, retaliate against protective parents, ignore and disregard evidence of physical and sexual abuse, conspire with and engage with the offending parent to suppress, disregard and hide evidence of abuse, maintain a custom of inadequate training of personnel and incomplete investigation, deliberately ignore harm to the child and relabeling the issue as a custody dispute, rather than investigate the harm to the child, all of which Plaintiff claims caused constitutional harms to her. *Id.* at ¶ 26.

## Causes of Action in Counts 1 through 12 of the Amended Complaint

## Count I

In Court 1, Plaintiffs asserted civil rights claims under 42 U.S.C. § 1981 and 1983, for violations of their Fourteenth Amendment Right to Parent and Familial Association. The claims were asserted against Defendants State of New Jersey, BCPO, DCP&P, DCF, Christine Norbut Beyer and Joanna Holota. (Exhibit-A, ¶ 34). Plaintiffs claim these Defendants knew it was unlawful to conduct sham investigations as to child abuse, to collude with others and misrepresent the nature of their limited inquiry as having satisfied Title 9 or other standard investigations and other established report procedures and fail in their statutory duties to provide

protection for an abused child, or fail to aid the Plaintiffs. *Id.* at Count 1, subparagraph 2.

Plaintiffs claim further to have the right to investigations by qualified individuals based on qualified inquiries and not on the basis of false information and misrepresentations that was without foundation, negligently prepared and deliberately fabricated by Defendants. *Id.* at subparagraph 4. Regarding the individually-named Defendants, Plaintiffs claim Beyer and Holota conspired to violate their civil rights under the Fourteenth Amendment by manufacturing, misrepresenting and or concealing evidence and testimony, which violated their due process rights. *Id.* at subparagraph 6.

## **Count 2**

In Count 2 Plaintiffs asserted claims under 42 U.S.C. § 1985 and § 1986 against the Defendants for conspiracy to violate their civil rights under the Fourteenth Amendment and their rights to parental and familial associations. (Exhibit-A, Count 2, ¶ 2-3). While acting under the color of state law, Plaintiffs claim the Defendants conspired with the Father, Scott Tamagny and Defendant Keith Slevin to deprive them of their constitutional rights. *Id.* Specifically, they claim the Defendants conspired to and did act, agree and/or conspire to unlawfully misrepresent, make false statements and reports, and purposely failed to conduct a thorough investigation of sexual and physical abuse of minors, Plaintiff Courtney

8

Tamagny and her siblings. *Id*. The purpose of the conspiracy Plaintiffs claim, was to deprive them of equal protection of the laws of the State of New Jersey and their due process rights under the Constitution.

## Count 3

In Count 3 Plaintiff alleged civil rights violations against the Defendants under 42 U.S.C. §§ 1981 and 1983 for violation of due process and equal protection. *Id.* at Count 3. Specifically, they claim Defendants deprived them of their constitutional rights under the Fourth, Eighth and Fourteenth Amendments of the U.S. Constitution, including the right to liberty, familial association and the right to due process of law. *Id.* at ¶ 2. As a result, Plaintiffs claim they suffered damage and impairment to their person, personal anxiety, mental anguish and suffering, emotional distress, physical suffering, loss of enjoyment of life, loss of income and costs to Plaintiffs against the accusations. *Id.* at ¶ 3.

## Count 4

In support of Count 4, Plaintiffs claim Defendants conspired with the father, Scott Tamagny and Defendant Keith Slevin to deprive them of their constitutional rights and conspired to unlawfully misrepresent, make false statements and reports, and fail to conduct a thorough investigation of sexual and physical abuse of minors, namely, Plaintiff Courtney Tamagny and her siblings. *Id.* at Count 4, ¶¶ 2-3. Plaintiffs also claim Defendants took several acts in furtherance of the conspiracy

including, but not limited to acting, agreeing, and conspiring to misrepresent, make false statements and reports, fail to conduct a thorough investigation of sexual and physical abuse, which deprived the Plaintiffs of their constitutional rights. *Id.* at ¶ 5.

## Count 5 - **Assault and Battery Only Against Defendants Scott Tamagny and Scott Slevin**

Plaintiffs did not assert any claims against the State Defendants in Counts 5 through 12 of the Complaint. In Count 5, they assert assault and battery claims against the father, Scott Tamagny and Defendant Keith Slevin, based on violent physical and sexual abuse. *Id.* at Count 5, ¶¶ 1-2. They claim the father began a pattern of forced sexual relations with Plaintiff Courtney Tamagny, consisting of vaginal and anal penetration and stimulations of the clitoris. *Id.* at ¶ 5. They also claim that the father and Slevin subjected Courtney Tamagny to continuous assault and battery through and until 2020. *Id.* at ¶ 6. They claim on numerous occasions the father and Slevin keep Courtney Tamegny in the basement against her will, in the shower, in the woods in Rockland County, New York and other locations where they forced her to engage in sexual acts. *Id.* at ¶ 7. Plaintiffs claim that as a direct result of Defendants Scott Tamagny and Keith Slevin's wrongful conduct, Courtney Tamagny has suffered permanent, severe and continuing injuries. *Id.* at ¶¶ 15-17.

10

**<u>Count 6</u> - Incestuous Abuse Only Against Defendants Scott Tamagny and Keith Slevin**

In Count 6, Plaintiff Courtney Tamagny asserted claims for Incestuous Abuse against Defendants Scott Tamagny and Keith Slevin. *Id.* at Count 6, ¶¶ 1-2. She claims that due to the familial relationship between Defendant Scott Tamagny and her when the sexual abuse occurred, the acts constituted incestuous abuse of a minor. *Id.*

**<u>Count 7</u> - Intentional Infliction of Emotional Distress and <u>Count 8</u>, Negligent Infliction of Emotional Distress Only Against Defendants Scott Tamagny and Keith Slevin.**

In Count 7, she asserts a claim for Intentional Infliction of Emotional Distress against the father, Scott Tamagny and Keith Slevin. *Id*. at Count 7, ¶¶ 1-3. She claims the father and Slevin knew their acts of sexual assaults would result in emotional distress and acted with willful and wanton disregard for Plaintiff's emotional wellbeing. As a result, Plaintiff claims she suffered severe emotional distress. *Id.* at ¶ 5.

In Count 8, Plaintiff Courtney Tamagny alleges Negligent Infliction of Emotional Distress, claiming her father, Scott Tamagny and Keith Slevin knew, or in the exercise of reasonable care should have known that their sexual assaults, battery and abuse would result in serious emotional distress. *Id*. at Count 8, ¶¶ 2-6. She claimed further that the father and Slevin negligently and carelessly breached a duty owed to her by negligently and carelessly engaging in acts of sexual assaults,

battery and abuse, which caused Plaintiff Courtney Tamagny to suffer severe emotional distress. *Id*.

**Count 9** - **Breach of Parental Duty Only Against Defendant Scott Tamagny.**

In Count 9. Plaintiff Courtney Tamagny claims Breach of Parental Duty, based on the allegation that her father, Scott Tamagny, in whom she placed her trust and confidence, owed a duty to take care of and love her in a manner that was in her best interest. *Id* at Count 9, ¶¶ 1-5. The Defendant father, she claims, breached the duty he owed by engaging in wrongful sexual acts and sexual assault and battery. *Id*. As a result, she claims he violated her due process rights and demands judgment against him. *Id*.

**Count 10** - **False Imprisonment and Count 11, Invasion of Privacy, and Count 12, Transportation of Minors Only Against Defendants Scott Tamagny and Keith Slevin.**

In Count 10, Plaintiff Courtney Tamagny claims that her father and Slevin falsely and unlawfully imprisoned her against her will. *Id*. at Court 10, ¶¶ 1-2. In Count 11, she claims her father and Slevin's wrongful actions and sexual assault were an invasion of her privacy and were done in malicious and wanton disregard for her feelings, character and reputation. *Id*. at Count 11, ¶¶ 1-3. She claims further that as a direct result of these Defendants actions, she suffered embarrassment, public ridicule, humiliation, mental pain and anguish. *Id*.

12

Finally, in Count 12, Plaintiff Countney Tamagny claims that her father and Slevin's wrongful actions and sexual assaults violated federal laws which explicitly prohibits illegal transportation of minors to engage in illicit sexual conduct. *Id.* at Count 12, ¶¶ 1-3. Her father and Slevin she claims, violated federal laws when they willfully transported her across state lines out of New Jersey and into Rockland County, New York, with the intent to engage in illegal sexual activity. *Id.* In addition to violating federal laws, she claims these Defendants' conduct caused her to suffer embarrassment, public ridicule, humiliation and mental anguish. *Id.*

### STANDARDS OF REVIEW

In lieu of filing an answer to a complaint, a defendant may file a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1) and 12(b)(6), respectively.

### A.     Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)

*Fed. R. Civ. P.* 12(b)(1) governs a dismissal for lack of subject matter jurisdiction. Motions to dismiss based upon sovereign immunity under the Eleventh Amendment are properly viewed as motions "to dismiss for lack of subject matter jurisdiction pursuant to *Fed. R. Civ. P.* 12(b)(1)" because "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.,* 77 F. 3d 690, 693 n.2 (3d Cir. 1996).

For the reasons that follow, the State Defendants are immune from suit

pursuant to the Eleventh Amendment, and thus, are entitled to dismissal pursuant to *Fed. R. Civ. P.* 12(b)(1).

**B.**     **Failure to State a Claim Pursuant to *Fed. R. Civ. P.* 12(b)(6).**

To survive a motion to dismiss under this Rule, a complaint must state more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that simply offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." *Id.*

Under the *Iqbal/Twombly* pleading framework, a district court should undertake a three-prong analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2009). First, the court should "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* Next, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*; *Twombly*, 550 U.S. at 555 (holding that "[f]actual allegations must be enough to raise a right to relief above the speculative level"). Finally, when a plaintiff's complaint contains "well-pleaded factual allegations," the allegations should be presumed veracious, and the court should ascertain whether they "plausibly give rise to an entitlement for relief." *Malleus*, 641 F.3d at 563. This finding requires more than a mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

**ARGUMENT**

**POINT I**

**ELEVENTH AMENDMENT SOVEREIGN IMMUNITY BARS ALL FEDERAL AND STATE CLAIMS SEEKING MONETARY DAMAGES AND/OR EQUITABLE RELIEF.**

The Eleventh Amendment to the United States Constitution prohibits "suits brought in federal courts by [a State's] own citizens as well as by citizens of another state" against the State. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). It is a jurisdictional bar and divests federal courts of their subject matter jurisdiction to hear a case. *See Pennhurst*, 465 U.S. at 98-100. Courts have long held that this immunity protects non-consenting States from suits brought in federal court by private citizens seeking monetary damages. *See id*. at 100-01.

Eleventh Amendment sovereign immunity extends beyond the State and immunizes state agencies, departments, and officials, provided they constitute "arm[s] of the state." *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). A state agency or department is an "arm" of the State when the State "is the real, substantial party in interest."

15

*Pennhurst*, 465 U.S. at 101 (citations omitted).

Here, in Counts 1, 2, 3, and 4 of the Complaint, Plaintiffs seek monetary damages against the State of New Jersey, New Jersey Division of Child Protection and Permanency, New Jersey Department of Children and Families, the Bergen County Prosecutor's Office,[3] Christine Norbut Beyer and Joanna Holota. *See* Exhibit-A, Count 1, ¶ 8; Count 2, ¶ 7; Count 3, ¶ 3; and Count 4, ¶ 7. However, based on the Eleventh Amendment, Plaintiffs are foreclosed from obtaining any monetary relief from these Defendants.

## POINT II

### ALL CLAIMS AGAINST THE STATE, STATE AGENCIES AND ALL INDIVIDUALLY-NAMED STATE DEFENDANTS IN THEIR OFFICIAL CAPACITIES SHOULD BE DISMISSED BECAUSE THEY ARE NOT PERSONS SUBJECT TO SUIT UNDER 42 U.S.C. § 1983.

In relevant part, 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

---

[3] Most notably, less than one year ago, this Court previously held that the BCPO was an arm of the State, and thus, was entitled to sovereign immunity pursuant to the Eleventh Amendment based upon application of the factors set forth in *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989). *See V.R. v. Bergen County Prosecutor's Office, et al.*, No. 23-20605, 2024 U.S. Dist. LEXIS 149055, at *12-16 (D.N.J. Aug. 19, 2024) ("Because the Court finds that the *Fitchik* factors weigh in favor of finding that BCPO is an arm state, it is immune from suit under the Eleventh Amendment and the Court lacks jurisdiction over claims against it.").

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To plead a cognizable § 1983 claim, a plaintiff must allege (1) a violation of a federal constitutional or statutory right; and (2) that the deprivation was committed by a "person" acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). While this statute provides a federal forum to remedy many deprivations of civil liberties, it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 60 (1989)

Here, the Plaintiff has sued the State of New Jersey, New Jersey Division of Child Protection and Permanency, New Jersey Department of Children and Families, the Bergen County Prosecutor's Office,[4] in addition to Christine Norbut Beyer and Joanna Holota in their official capacity. (*See* generally, Exhibit-A). But as the *Will* Court succinctly expounds, a suit against a state agency or state official in his official capacity constitutes nothing more than a suit against the State itself. *See Will*, 491 U.S. at 71. A state agency or department is an "arm" of the State when the State "is

---

[4]   To be clear, this Court has regularly held that county prosecutor's offices, including the BCPO, are "arms of the State," and thus, not "persons" who can be sued for alleged violations of Section 1983.  *See, e.g., Oliveria v. Borough of N. Arlington*, 2017 U.S. Dist. LEXIS 54343, at *4 (D.N.J. Apr. 10, 2017) (collecting cases and explaining that "the BCPO . . . is not a 'person' subject to liability under Section 1983 or the NJCRA when office is fulfilling its law enforcement and investigative roles.").

the real, substantial party in interest." *Pennhurst*, 465 U.S. at 101 (citations omitted);

*see also Haybarger v. Lawrence Cnty*. Adult Prob. & Parole, 551 F.3d 193, 198 (3d

Cir. 2008) (finding that shield of Eleventh Amendment sovereign immunity extends

to "subunits of the State"). Further, a suit against a state official in "her official

capacity is treated as a suit against the governmental entity itself." *A.M. ex rel.*

*J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.,* 372 F.3d 572, 580 (3d Cir. 2004).

Therefore, these State Defendants are not persons subject to suit under 42

U.S.C. § 1983 and all claims against them for monetary and equitable relief should

be dismissed with prejudice.

## POINT III

### THIS COURT SHOULD ABSTAIN FROM ISSUING DECISIONS AFFECTING THE STATE COURT CUSTODY DETERMINATION PURSUANT TO THE *ROOKER-FELDMAN* AND/OR *YOUNGER* ABSTENTION DOCTRINE.

This Court should also dismiss the complaint because it is required to abstain

from interfering with any state-court determinations related to custody – the *Rooker-*

*Feldman* doctrine (if Plaintiff's state-court proceedings are concluded) or *Younger*

abstention (if the proceedings are ongoing). Plaintiff's Complaint does not specify

whether the state proceedings are concluded, but the only difference the status of the

state-court case will make is what doctrine precludes federal adjudication of the

claims against the State Defendants.

**A.**    **Application of the *Rooker-Feldman* Doctrine Warrants Dismissal.**

Under the *Rooker-Feldman* doctrine, district courts are prohibited from exercising jurisdiction and reviewing a state court's final determinations. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163 (3d Cir. 2010); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) (holding that "no court of the United States other than this Court could entertain a proceeding to reverse or modify the judgment for errors"); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983). The application of *Rooker-Feldman* is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Great W. Mining & Mineral Co.*, 615 F.3d at 166 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The "fundamental principle" of the *Rooker-Feldman* doctrine is that district courts are barred from sitting as an appellate court to adjudicate state court proceedings. *Port Auth. Police Benevolent Assoc., Inc. v. Port Auth.*, 973 F.2d 169, 178-79 (3d Cir. 1992).

For the *Rooker-Feldman* doctrine to apply, the following requirements must be met: (1) the plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the judgment was rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject

19

the state court judgment. *Great W. Mining & Mineral Co.*, 615 F.3d at 166. Regarding the fourth requirement, the *Rooker-Feldman* doctrine precludes lower federal court jurisdiction over claims that: (1) were "actually litigated" in state court or (2) are "inextricably intertwined" with adjudication by a state's courts. *ITT Corp. v. Intelnet Int'l Corp.*, 366 F. 3d 205, 210 (3d Cir. 2004). A federal action is "inextricably intertwined" with a state adjudication "'where federal relief can only be predicated upon a conviction that the state court was wrong.'" *ITT Corp.*, 366 F. 3d at 211(quoting *FOCUS v. Allegheny Cnty. Ct. of Common Pleas,* 75 F. 3d 834, 840 (3d Cir. 1996) ("State and federal claims are inextricably intertwined... 'when in order to grant the...relief sought, the federal court must determine that the state court judgment was erroneously entered' [or]...when 'the federal court...take[s] action that would render [the state court's] judgment ineffectual.'")).

Here, to the extent state proceedings have concluded and Plaintiff is dissatisfied with the outcome of the state-court decision concerning her custody rights, the *Rooker-Feldman* doctrine precludes this Court from granting relief to the Plaintiff based on the conclusion that the state decisions were wrong. Conversely, if Plaintiff's state-court proceedings are ongoing, *Younger* abstention is required.

**B.    Alternatively, the *Younger* Abstention Doctrine Permits Dismissal.**

*Younger* abstention "requires federal courts to abstain from deciding cases that would interfere with certain ongoing state proceedings." *Malhan v. Sec'y U.S.*

*Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019). There are two steps involved in any *Younger* analysis. First, a court must seek to determine whether the underlying state proceeding is the type to which abstention applies, including whether the state litigation is a "'civil proceedings involving orders in furtherance of the state courts' judicial function.'" *Id.* (quoting *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014)).

If the case falls within those categories of cases in which abstention is implicated as identified in *Sprint Commc'ns, Inc., v. Jacobs*, 571 U.S. 69, 77 (2013), a federal court then determines if additional factors are satisfied: "(1) whether there are ongoing judicial proceedings; (2) whether those proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceeding to raise constitutional challenges." *Id.* (quoting *Middlesex*, 457 U.S. at 432).

In *Silver v. Court of Common Pleas*, 802 F. App'x 55 (3d Cir. 2020), the Third Circuit held that state custody litigation falls within the Sprint category of "civil proceedings involving orders in furtherance of the state courts' judicial function," because such proceedings are for the purpose of the unique state-court function of "promoting and protecting the best interests of a child." *Id.* at 58-59. Thus, *Younger* abstention is required if Plaintiff's state case is ongoing.

**POINT IV**

**PLAINTIFF HAS FAILED TO ESTABLISH A CAUSE OF ACTION FOR CONSPIRACY TO VIOLATE HER FEDERAL OR STATE CONSTITUTIONAL RIGHTS**

The Federal Civil Rights Act, 42 U.S.C. § 1985, sets forth a private right of action that specifically addresses conspiracies to deprive a person of her civil rights. 42 U.S.C. § 1985 (3) generally describes a conspiracy as two or more persons for the purpose of depriving another of equal protection of the laws or equal privileges and immunities under the laws. Conspiracy is a vehicle by which 1983 liability may be imputed to those who have not actually performed the act denying constitutional rights. *Fioriglio v. City of Atl. City*, 996 F. Supp. 379, 385 (D.N.J.) 1998*), aff'd*, 185 F.3d 861 (3d Cir. 1999). Accordingly, "a 1983 conspiracy claim is not actionable without an actual violation of 1983*." PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F. Supp. 808, 832 (D.N.J, 1993) .

To succeed on a § 1983 conspiracy claim, "the plaintiff must make specific factual allegations of a combination, agreement, or understanding among all or between any of the defendants to plot, or conspire to carry out the alleged chain of events in order to deprive plaintiff of a federally protected right." *Fioriglio,* 996 F. Supp. at 385. To survive dismissal, Plaintiff must demonstrate that the State Defendants had a "meeting of the minds" and reached an understanding to achieve the alleged conspiracy. *See id.* at 386.

Similarly, under New Jersey state law, Plaintiff must present some evidence of an agreement to commit an unlawful act. *See Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N. J. 2005) ("In New Jersey, a civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.") (internal quotation marks and citation omitted)

In support of her conspiracy claim here, Plaintiff pleads the following naked and unsupported allegations:

> [The State Defendants] have entered into an express or implied agreement to use improper and unlawful means to abuse process of law and deny litigants their fundamental rights under the First Amendment and both the Due Process and Privileges and immunities clauses of the Fourteenth Amendment for their benefit and to injure persons appearing before the courts of the State of New Jersey. These Defendants have committed overt acts, as described above, in furtherance of the aforementioned agreement. As a result of these overt acts, Plaintiff has been damaged.

> [Compl, at ¶¶ 124-126]

However, to sufficiently plead a Section 1985 conspiracy claim, a complaint must contain facts that plausibly allege "supportive factual allegations." *Ivan v. County of Middlesex*, 595 F. Supp. 2d 425, 484 (D.N.J. 2009) (quoting *Rose v. Bartle*, 871 F.2d 331, 336 (3d Cir. 1989)). "Mere conclusory allegations that a conspiracy exists will not survive a motion to dismiss." *Harley v. City of N.J. City*, No. 16-5135, 2017 U.S.

Dist. LEXIS 98808, *29 (D.N.J. June 27, 2017) (citing *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 605 (D.N.J. 2002)).

Even construed liberally, the allegation that the State Defendants "entered into an express or implied agreement", Compl. at ¶ 124, or "committed covert acts", *id.* at ¶ 125, are legal conclusions lacking any degree of specificity as to when, where, why, or how the State Defendants acted in concert to unlawfully deprive Plaintiff of her constitutional rights. *Cf. Drisco v. City of Elizabeth*, No. 12-2111, 2013 U.S. Dist. LEXIS 175151, *25 (D.N.J. Dec. 6, 2013) (dismissing for failure to state a claim under Section 1985 where plaintiff "ha[d] not pleaded any facts suggesting 'agreement' or 'conspiracy' or even parallel conduct by any two defendants"). Because the Plaintiff has not sufficiently pled or establish a cause of action for conspiracy, the "Sixth Count" of the Complaint asserting a conspiracy claim should be dismissed with prejudice.

## POINT V

### CLAIMS AGAINST DEFENDANTS CHRISTINE NORBUT BEYER AND JOANNA HOLOTA IN THEIR INDIVIDUAL CAPACITY SHOULD BE DISMISSED BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY.

As for claims against State Defendants Christine Norbut Beyer and Joanna Holota in their individual capacity, dismissal of all claims against them is appropriate because they are entitled to qualified immunity. They are entitled to the qualified immunity defense because the gravamen of Plaintiffs' claim is that the

24

State Defendants did not protect them from sexual abuse by conducting a "thorough and adequate investigation." (See generally, Exhibit-A). But Plaintiffs do not have a clearly established constitutional right to an adequate investigation, or any investigation at all. *See Fuchs v. Mercer County*, 260 Fed. Appx. 472, 475 (3d Cir. 2008).

The doctrine of qualified immunity "balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Government officials are immune from liability for civil damages as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Kelly v. Borough of Carlisle,* 622 F.3d 248, 253 (3d Cir. 2010). The doctrine "gives ample room for mistaken judgments" and "protect[s] all but the plainly incompetent or those who knowingly violate the law." *Kelly,* 622 F.3d at 254 (internal quotation marks and citations omitted). In each case, the government's interests must be balanced against the citizens' interest in vindicating their constitutional rights, as well as the public interest in holding officials accountable "when they exercise power irresponsibly." *Pearson,* 555 U.S. at 231.

Qualified immunity is analyzed in two steps. First, the court decides whether

the facts alleged, taken in a light most favorable to the plaintiff, make out the violation of a constitutional right. *Saucier v. Katz,* 533 U.S. 194 (2001). Next, the court must examine whether the right at issue was "clearly established at the time of the challenged conduct." *Reichle v. Howards,* 566 U.S. 658, 664 (2012). To be "clearly established," a right must be sufficiently clear such that a reasonable official would have known that his conduct was unlawful. *Id.* The Supreme Court emphasized that, while a case directly on point is not required to show that a right was clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna,* 577 U.S. 7, 12 (2015) (citation omitted).

The two prongs to the qualified immunity inquiry need not be analyzed in sequential order; courts have discretion to decide which of the two prongs to tackle first. *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011); *Pearson,* 555 U.S. at 236. Moreover, because qualified immunity bestows immunity from suit (rather than a mere defense to liability), the Supreme Court has "repeatedly [] stressed the importance of resolving the immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Thus, "[u]ntil this threshold immunity question is resolved, discovery is not to be allowed." *Id.* (quoting *Harlow*, 457 U.S. at 818); *see also Radiation Data, Inc. v. N.J. Dep't of Envt'l Prot.*, 196 A.3d 579, 560 (N.J. Super. Ct. App. Div. 2018) ("[A]pplication of the defense of

26

qualified immunity is a legal question for the court rather than the jury; therefore, the defense should be raised and resolved 'long before trial.'").  Notably, Courts in the Third Circuit are instructed to "consider the qualified immunity defense before dismissing without prejudice on the merits[.]"  *Roth v. City of Hermitage*, 709 F. App'x 733, 736 (3d Cir. 2017).

As noted herein, the basis of Plaintiffs' constitutional claims relate to an alleged inadequate child abuse investigation. However, there is no recognized constitutional right to an "adequate investigation." The Third Circuit has specifically found "[t]here is no statutory or common law right, much less a constitutional right, to an investigation." *Fuchs v. Mercer County*, 260 Fed. Appx. 472, 475 (3d Cir. 2008) (quoting *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007)). Perhaps unsurprisingly, it follows that there is no constitutional requirement to "undertake an exhaustive investigation." *Merkle v. Upper Dublin School Dist.*, 2111 F.3d 782, 790, n.8 (3d Cir 2000).

Moreover, claims of "negligent investigation" are not even cognizable in a civil rights context. *See* O*rsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *see also Williams v. Dargan*, No. 10-2367, 2011 U.S. Dist. LEXIS 10610, at *18-19 (D.N.J. Feb. 3, 2011). Indeed, "negligence does not trigger a constitutional violation." *McGillvary v. Union Cty.*, No. 15-8840, 2020 U.S. Dist. LEXIS 75909, at *14 (D.N.J. Apr. 30, 2020) (citing *Daniels v. Williams*, 474 U.S. 327, 334 (1986)

and *Baker v. McCollan*, 443 U.S. 137, 144 (1979)). As the Third Circuit has explained, "negligence by public officials is not actionable as a due process deprivation of a civil right." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (citing *Orsatti*, 71 F.3d at 484).

As a result, dismissal on the grounds of qualified immunity is appropriate for all claims against Defendants Christine Norbut Beyer and Joanna Holota because they did not violate a clearly established constitutional or statutory right of which a reasonable person would have known." *Harlow,* 457 U.S. at 818.

**<u>CONCLUSION</u>**

Based on the foregoing, the State Defendants respectfully request that the Court grant the motion, dismissing plaintiff's complaint with prejudice.

Respectfully submitted,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By:    s/Marvin L. Freeman
          Marvin L. Freeman
          Deputy Attorney General

Dated:  May 27, 2025