**DEMETRIOS K. STRATIS, ESQ. (022391991)**
**Ruta, Soulios & Stratis, LLP**
10-04 River Road
Fair Lawn, New Jersey 07410
(201) 794-6200 / (201) 794-6300 Fax
Email:  dstratis@stratislaw.com
Attorneys for Plaintiffs

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

---

COURTNEY TAMAGNY AND
JEANNE TAMAGNY

                       Plaintiffs,

                                        CASE NO.: 2:25-cv-00732

-vs-

DIVISION OF CHILD PROTECTION
ET AL.

                       Defendants

---

BRIEF IN OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS

## **TABLE OF CONTENTS**

Page

Preliminary Statement……………………………………………….…………..2

Statement of Facts…………………………………………………………………3

Legal Standard………………………………………………….……………….....6

Legal Argument………………………………………………………………………7

POINT I:  PLAINTIFFS CONSTITUTIONAL CLAIMS ARE NOT BARRED BY SOVEREIGN IMMUNITY………………………………………………..…........7

POINT II:  STATE DEFENDANTS WRONGFULLY SUGGEST THE APPLICABILITY OF THE *ROOKER-FELDMAN* DOCTRINE OR *YOUNGER* ABSTENTION DOCTRINE …………………………………………….……....9

POINT III:  PLAINTIFFS HAVE SUFFICIENTLY STATED A CLAIM FOR CONSPIRACY………………………………………………………..…16

POINT IV:  PLAINTIFFS CLAIMS OF STATE DEFENDANTS ACTING IN CONCERT WITH PRIVATE INDIVIDUALS MUST SURVIVE A MOTION TO DISMISS…………………………………………………………………..…....20

POINT V:  STATE DEFENDANTS DO NOT HAVE QUALIFIED IMMUNITY …………………………………………………………………..…….....21

POINT VI:  DUTY IS THE CRUX FOR ESTABLISHING A CLAIM………..27

POINT VII:  STATE DEFENDANTS ARE LIABLE ON STATE-CREATED DANGER CLAIMS  ……………………………………..30

POINT VIII:  DEFENDANTS ARE NOT IMMUNE UNDER THE NEW JERSEY TORTS CLAIMS ACT  …………………………………………….35

Conclusion……………………………………………………………………39.

## TABLE OF AUTHORITIES                          pg

Adickes v. S.H. Kress & Co., 398 U.S. 144, 150-52, (1970)          16

Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)          21

Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149–50 n. 3 (1984)          38

Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir.1986)          7

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555,
    127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)          6

Bennett v. Town of Riverhead, 940 F. Supp. 481, 488–89 (E.D.N.Y.1996)          27

Bistrian v. Levi, 696 F. 3d 352, 365 (3rd Cir. 2012)          21

Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006)          35

Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473,
478 (3d Cir.2003)          34

Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 184–85 (3d Cir. 2009)  18

Christy v. Pennsylvania Turnpike Comm'n, 54 F.3d 1140, 1144
    (3rd Cir.1995)          8

City of Los Angeles v. Preferred Comm., Inc., 476 U.S. 488, 493 (1986)          20

Clohesy v Food Circus, 149 NJ 496, 502 (1997)          28

Colbert v City of Chicago, 851 F.3d 649 at 657–58 (7th Cir. 2017)          17

Cook v. Harding, 879 F.3d 1035, 1041 (9th Cir. 2018)          14

Croft v. Westmoreland Cnty. Child. & Youth Servs., 103 F.3d 1123, 1125 (3d Cir.
1997)          24

Crabtree v. Muchmore, 904 F.2d 1475, 1481 (10th Cir. 1990)          18

Cty. of Sacramento v. Lewis, 523 U.S. 833 (1998)                                    31

DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189,
    199–200 (1989)                                                              34

District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)    9

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)  10

F.A. by P.A. v. W.J.F., 280 N.J. Super. 570, 572 (App. Div.1995)         30

Great W. Mining, v Fox Rothschild, 615 F.3d 159 at 178–79 (3d Cir 2010)  10

Hafer v. Melo, 502 U.S. 21, 30–31, 112 S.Ct. 358, 116 L.Ed.2d 301
    (1991)                                                                        7

Hampton v. Hanrahan, 600 F.2d 600, 627–28 (7th Cir. 1979)                18

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)                           21

Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005)                 6

Huffman v. Pursue, Ltd., 420 U.S. 592, 604 (1975)                        12

In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397
    (3d Cir. 2000)                                                                6

Johnson v. De Grandy, 512 U.S. 997, 1005–06 (1994)                        9

Juidice v. Vail, 430 U.S. 327, 336 n.12 (1977)                           12

Kansas Penn Gaming, LLC v. Collings, 656 F.3d 1210 (10th Cir. 2011)      33

Kedra v. Schroefer, 876 F.3d 424 (3d Cir. 2017)                           9

Kelly v. Gwinnell, 96 N.J. 538, 544–45, (1984)                           28

Kneipp v. Tedder, 95 F.3d 1199, 1201 (3d Cir.1996)                       34

Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993)                      18

Kuzmicz v. Ivy Hill Park Apts., Inc., 147 N.J. 510, 515 (1997)          28

Ky v. Graham, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)          8

Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 27 (1981)          24

Lauth v. McCollum, 424 F.3d 631, 633 (7th Cir. 2005)          33

Lowery v. County of Riley, 522 F. 3d 1086, 1092 (10th Cir. 2008)          26

Malhan v. Sec'y U.S. Dep't of State, 938 F.3d 453, 463 (3d Cir. 2019)          15

Mann v. Boatright, 477 F.3d 1140, 1147 (10th Cir. 2007)          10

Marley v. Borough of Palmyra, 193 N.J. Super. 271,  (Law Div.1983)          36

Meyer v. Nebraska, 262 U.S. 390, 401 (1923)          24

Moore v. Sims, 442 U.S. 415, 423 (1979)          12

Morse v Lower Merion Sch Dist., 132 F 3d 902, 907 (3rd Cir 1997)          31

New Orleans Public Service, Inc. v. Council of the City of New Orleans,
491 U.S. 350 (1989)          12

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380,
        1384-85 (3d Cir. 1994)          6

Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 13 (1987)          12

Peroza-Benitez v Smith, 994 F.3d 157 at 166 (3rd Cir 2021)          22

Phillips v. Cty. of Allegheny, 515 F.3d 224, 238 (3d Cir. 2008)          32

Pierce v. Society of Sisters, 268 U.S. 510, 534–35 (1925)          24

Pittsburg v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998)          6

Portee v. Jaffee, 84 N.J. 88, 101 (1980)          28

Prince v. Massachusetts, 321 U.S. 158, 166 (1944)                                    25

Roberts v. U.S. Jaycees, 468 U.S. 609, 617–18, (1984)                         26

Rooker v. Fid. Tr. Co., 263 U.S. 413, 415-16 (1923)                              9

Rynearson v. Ferguson, 903 F.3d 920, 926 (9th Cir. 2018)              14

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)                                         20

Schneyder v. Smith, 653 F.3d 313, 330 (3d Cir. 2011)                          22

Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000)          6

Slinger v. New Jersey, 366 Fed. Appx. 357, 360–61                              7

Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey, 27 F.4th 886, 894 (3d Cir. 2022)                                                                                       14

Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013)               12

Stanley v. Illinois, 405 U.S. 645, 651, (1972)                                        24

Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008)      18

Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 364-65 (2016)      38

Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987)                             6

Tice v. Cramer, 133 N.J. 347, 375 (1993                                               36

Trainor v. Hernandez, 431 U.S. 434, 444 (1977)                                   12

Troxel v. Granville, 530 U.S. 57, (2000)                                                25

United States v. Wright, 665 F.3d 560, 569 (3d. Cir. 2012)                 19

VanderKodde v. Mary Jane M. Elliott, P.C., 951 F. 3d 397, 405
     (6th Cir. 2020)                                                                                 10

Vargas v. City of Philadelphia, 783 F.3d 962, 973–74 (3d Cir. 2015)        32

Vasquez v. Hernandez, 60 F.3d 325, 328–29 (7th Cir. 1995)        17

Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)        33

Weinberg v Dinger, 106 N.J. 469 at 481 (1987)        27

Weitzel v. Div. of Occupational & Pro. Licensing of Dep't of Com., 240 F.3d 871, 874-75 (10th Cir. 2001)        11

West v. Atkins, 487 U.S. 42, 48 (1988)        8

Williams v. Bitner, 455 F.3d 186, 192 (3d Cir. 2006)        22

Wisconsin v. Yoder, 406 U.S. 205, 232–33 (1972)        25

Wolff v. McDonnell, 418 U.S. 539, 579, (1974)        17

Worthington v. Anderson, 386 F.3d 1314, 1318 (10th Cir. 2004)        10

Wytupeck v. Camden, 25 N.J. 450, 462, (1957)        28

Younger v.Harris, 401 U.S. 37 (1971)        11

Younger. Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc., 98 F.4th 1307, 1317 (10th Cir. 2024)        12

<u>STATUTES</u>

NJSA § 9:6-8.8        23

N.J.S.A. § 9:6-8.11        23

FRCP 12(b)(6)        6

## <u>PRELIMINARY STATEMENT</u>

Plaintiff incorporates by reference the facts set forth in the Verified Complaint and Amended Verified Complaints[1]. (Exhibits A and B attached to the Certification of Defendants Counsel). By way of summary and as a preliminary statement, Plaintiffs collectively sue the Defendants DCF, DCPP, Bergen County Prosecutors Office, and those individuals associated with these agencies and offices (collectively "State Defendants") for violation of civil rights pursuant to 42 USCA sect 1983 and as set forth in the Fourteenth Amendment which states that no "state shall deprive any person of life, liberty, or property, without due process of law." <u>U.S. Const. amend. XIV, § I</u>. Included within the due process clause is the right to parent and the right to be parented. See *<u>Troxel v. Granville, 530 U.S. 57, 65 (2000)</u>*. Plaintiffs assert that their rights as protected by the U.S Constitution have been violated by virtue of the State Defendants willful, wanton, reckless and grossly negligent acts or omissions.

---

[1] Plaintiffs have filed a Motion for Leave to file a Second Amended Complaint. For purposes of opposing the State Defendants Motion to Dismiss, the operative Complaint is the Amended Complaint Document 23. (See attached to the Certification of Counsel as Exhibit B.)

## STATEMENT OF FACTS

Plaintiff Courtney Tamagny is the daughter of Plaintiff Jeanne Tamagny and daughter of Defendant John Scott Tamagny (hereinafter "Father"), and she asserts and verifies that she was sexually abused and assaulted by Defendant Father and Defendant Keith Slevin.  (See Amended Complaint para 1 and 14.)   The abuse occurred while she was a minor and for years thereafter until she was 15 years of age.  Id.  The facts upon which this Complaint is based, as verified by the affidavit attached to the Complaint are set forth in the Complaint and Amended Complaint at length and include specific details of sexual abuse including vaginal and digital penetration and sexual touching by Defendant Father and Defendant Slevin.  Id. Attached to the Complaint are reports from experts opining that: "In conclusion, it is my professional opinion to a reasonable degree of psychological certainty that the abuse described by CT and ST occurred."  (See report of Dr Steven N. Gold attached to the Verified pleadings para 16 to 21.)

Plaintiffs, both Courtney Tamagny and Jeanne Tamagny, allege in their verified pleadings that Defendants Beyer, Holota, and Zblocki[2] and Defendants Bergen County Prosecutor's Office, DCPP, DCF and State of New Jersey, (collectively hereinafter "State Defendants") failed to investigate, failed to protect, and failed to exercise their duties and obligations and acted in a willful, wanton,

---

[2] Matthew Zblocki is an investigator with the Defendant Bergen County Prosecutor's Office and a Motion for Leave to include him as a party Defendant is pending before the Court.

reckless or grossly negligent manner and their conduct shocks the conscience. See Amended Complaint para 26.  Specifically, at Paragraph 26, the Plaintiffs allege that the State Defendants:

1. suppressed and ignore child welfare reports of physical and sexual abuse;

2. retaliated against the protective parent, the parent who did not commit the abuse;

3. ignored and disregarded evidence of physical abuse and sexual abuse;

4. conspired with and engaged with others to disregard and ignore evidence of abuse;

5. conspired with and engaged with the offending parent to suppress, disregard, and hide evidence of abuse;

6. maintained a custom of inadequate training of personnel and incomplete investigation into matters which inevitably results in failed investigations into reports of harm to child and then resulted in continued exposure to further harm to child;

7. deliberately ignored harm to the child and relabeling as custody dispute and there are differences in parenting instead of investigating the harm to the child and protecting the child from further harm which also resulted in moving the burden of protection to the mother who is then exposed to and attacked for trying to protect your children from harm;

4

8. caused the constitutional violations of the Plaintiffs as complained in the pleadings.  Id.

The Plaintiffs further allege that the State Defendants knew or should have known that the children were in danger in Defendants Father's care and Defendant Father committed acts of sexual and physical abuse.  See para 26 to 34 of Amended Complaint.  They further allege that they were entitled to certain rights and protections which were denied to her by the customs and practices of the State Defendants and that each State Defendant acted under color of law of the law of the State of New Jersey.  Id.

They further allege that:

1. the Defendants' acts and omissions were a material element and/or substantial factor in bringing the harm about to the Plaintiffs.  The harms sustained by Plaintiffs were a reasonably foreseeable result of Defendants' improper acts and omissions.

2. Defendants, each of them, acted in a willful, wanton, reckless or grossly negligent manner and their conduct shocks the conscience.

3. Defendants are liable for Plaintiffs injuries, pursuant to N.J.S.A. 59:1-1 et seq. These Defendants are jointly and severally liable for the injuries sustained by Plaintiffs.

Id.

# LEGAL STANDARD

A FRCP 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007); *see also In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 397 (3d Cir. 2000) (stating that a complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim). In reviewing a motion to dismiss, pursuant to FRCP 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, the matters of public record. *See Pittsburg v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998).

A court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 (3d Cir. 1994); *see also Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). "The defendant bears the burden of showing that no claim has been presented." *See Hedges v. United States*, 404 F.3d 744, 750

(3d Cir. 2005). A motion to dismiss a complaint under Fed.R.Civ.P. 12(b)(6) will be granted only when, taking the allegations in the complaint and all reasonable inferences therefrom as true, the plaintiff can prove **no set of facts** that would entitle him to relief. *See* <u>*Bartholomew v. Fischl,*</u> 782 F.2d 1148, 1152 (3d Cir.1986) (emphasis added.)

## LEGAL ARUGUMENT

## POINT I:  PLAINTIFFS CONSTITUTIONAL CLAIMS ARE NOT BARRED BY SOVEREIGN IMMUNITY

In this instance, Plaintiffs have brought claims against the named Defendants in their individual capacities, which is permitted. (*See generally* Verified Am. Compl.) State officers and employees can be held personally liable under § 1983 based on actions performed in their official capacities. <u>*Hafer v. Melo,*</u> 502 U.S. 21, 30–31 (1991). Specifically, the Supreme Court has held that "the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Id.* at 30–31; *see also* <u>*Slinger v. New Jersey,*</u> 366 Fed. Appx. 357, 360–61 (3rd Cir 2010) (reversing the district court's dismissal of a complaint as to § 1983 claims against defendants in their individual capacities). Thus, to the extent the claims are against named Defendants in their individual capacities, the claims should not be dismissed.

Absolute immunity is not extended to officials "personally liable for acts done in the course of their official duties." _Hafer_ at 28. Therefore, the party that asserts the protection of the Eleventh Amendment and stands to be immune bears the burden of demonstrating its applicability. _Christy v. Pennsylvania Turnpike Comm'n,_ 54 F.3d 1140, 1144 (3rd Cir.1995). Actions brought against an official in his or her individual capacity "seek to impose individual liability upon a government officer for actions taken under color of state law." _Hafer,_ 502 U.S. at 25. Accordingly, a plaintiff must only show that the official was acting under color of state law and caused the deprivation of a federal right to "establish personal liability in a § 1983 claim." _Id._ at 25 (citing _Ky v. Graham,_ 473 U.S. 159 (1985)).

The individual State Defendants are "persons" for purposes of § 1983 and subject to suit under the N.J.C.R.A in their official capacities. The claims against the State Defendants are in their individual capacities. As such, they remain Defendants in this action whether or not they are subject to suit in their official capacities. As Defendants assert in their Motion, to plead a cognizable § 1983 claim, a plaintiff must allege (1) a violation of a federal constitutional or statutory right; and (2) that the deprivation was committed by a "person" acting under color of law. _West v. Atkins_, 487 U.S. 42, 48 (1988). That is precisely what Plaintiffs do in their Amended pleading – assert a violation of their civil rights and allege that the individual State Defendants were acting under color of law. See Amended

8

Compl. Para 29 to 33.)  The individual State Defendants are amenable to suit, as each was involved in the deprivation of constitutional rights and privileges both under the U.S. Constitution and the New Jersey State Constitution, and their conduct was under color of state and federal law as individuals affiliated with Defendant Bergen County Prosecutor's Office or Defendant DCF – both of which are charged by statute with the duty to investigate sexual abuse.  Plaintiffs allege State Defendants did so in a reckless and grossly negligent manner causing foreseeable harm.  As such, this case should continue against each of those individual defendants who acted under the color of law because of their deliberate indifference to the well-being of Plaintiffs. Kedra v. Schroefer, 876 F.3d 424 (3d Cir. 2017).

### POINT II:  STATE DEFENDANTS WRONGFULLY SUGGEST THE APPLICABILITY OF THE *ROOKER-FELDMAN* DOCTRINE OR *YOUNGER* ABSTENTION DOCTRINE

### A.  THE *ROOKER-FELDMAN* DOCTRINE

The Rooker–Feldman doctrine bars "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005–06 (1994). This doctrine is named for two cases, Rooker v. Fid. Tr. Co.,

263 U.S. 413, 415-16 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). Under Rooker, generally, a federal district court cannot review matters actually decided by a state court, 263 U.S. at 415, 44 S.Ct. 149; see also Worthington v. Anderson, 386 F.3d 1314, 1318 (10th Cir. 2004) ("The Rooker/Feldman doctrine protects state court judgments from review by federal courts other than the United States Supreme Court."). The Rooker-Feldman doctrine has evolved to become a jurisdictional bar to cases "brought by state-court losers' challenging state-court judgments rendered before the district court proceedings commenced." Mann v. Boatright, 477 F.3d 1140, 1147 (10th Cir. 2007) (citations, internal quotations, and alterations omitted). The jurisdictional bar applies when "(1) the plaintiff lost in state court, (2) the state court judgment caused the plaintiff's injuries, (3) the state court rendered judgment before the plaintiff filed the federal claim, and (4) the plaintiff is asking the district court to review and reject the state court judgment." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).

As to the Doctrine's efficacy, the United States Court of Appeals for the Sixth Circuit Judge Jeffrey Sutton elaborated in a concurrence in VanderKodde v. Mary Jane M. Elliott, P.C., 951 F. 3d 397, 405 (6th Cir. 2020):

> "After Justice Ginsburg's unanimous opinion in Exxon Mobil v. Saudi Basic Industries, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), it looked

like the Court finally and mercifully had driven a stake through Rooker - Feldman. The so-called doctrine had caused so much mischief, creating needless complications, distracting litigants and courts from the properly presented federal issues at hand, and helping no one, not even the supposed beneficiaries of its largesse: state court judgments. One could be forgiven for thinking, as I and others did, that, unless your name was Rooker or Feldman, this supposed limit on the jurisdiction of the federal courts applied to no one, save the occasional innocent who thought he could obtain appellate review of a final state supreme court decision in federal district court, as opposed to the U.S. Supreme Court. See Samuel Bray, Rooker-Feldman (1923–2006) , 9 Green Bag 2d 317, 317–18 (2006) ; In re Smith, 349 F. App'x 12, 17 (6th Cir. 2009) (Sutton, J., concurring in part and dissenting in part)."

The *Rooker-Feldman* doctrine, moreover, has no application to Plaintiff's federal constitutional claims against the State Defendants. They have never been adjudicated in state court. Plaintiffs constitutional attack on the State Defendants actions have never been adjudicated, and Plaintiffs have not lost those claims in state court. They are not asking this Court for redress of an adverse state court judgment. There is no state court judgment upholding the constitutionality of the State Defendants wrongful acts. As such, the applicability of the *Rooker-Feldman* Doctrine is misplaced.

### ***THE YOUNGER ABSTENTION DOCTRINE***

The *Younger* abstention doctrine generally requires federal courts to abstain from interfering with ongoing state legal proceedings. *Weitzel v. Div. of Occupational & Pro. Licensing of Dep't of Com.*, 240 F.3d 871, 874-75 (10th Cir.

2001) (citing *Younger v.Harris*, 401 U.S. 37 (1971)). It applies when "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests." *Id.* at 875 (quotations omitted).

In addition to the foregoing elements, the Supreme Court has further limited *Younger* to three categories. In *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350 (1989), the Court, drawing from its previous *Younger* decisions, said the doctrine applies when the state proceedings are (1) "criminal prosecutions," *id.* at 368; (2) certain "civil enforcement proceedings," *id.* (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975); *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977); *Moore v. Sims*, 442 U.S. 415, 423 (1979)); or (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions," *id.* (citing *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977); *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13 (1987)). In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Court said *Younger* applies only to these three "exceptional" categories of state proceedings and is not to be extended beyond them. *Id.* at 78.

As the 10th Circuit recently noted, "If and only if the state court proceeding falls within one of the[se] enumerated 'exceptional' types of cases" from *Sprint*

"*may* courts analyze the propriety of abstention" under *Younger*. *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024). Because the underlying state proceeding here is a domestic relations civil case, the second and third *Sprint* categories warrant discussion.

The second *Sprint* category includes certain civil enforcement proceedings that are "'"akin to a criminal prosecution' in 'important respects.'" *Sprint*, 571 U.S. at 78-79 (quoting *Huffman*, 420 U.S. at 604). "In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action," and the "enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Id.* at 79 (citing *Moore*, 442 U.S. at 419-20).  In *Moore*, for example, the Texas Department of Human Resources sued two parents for child abuse and to take temporary custody of their children. 442 U.S. at 419-21. The Supreme Court held that *Younger* abstention applied because the state was a party to the proceeding and "the temporary removal of a child in a child-abuse context is . . . 'in aid of and closely related to criminal statutes.'" *Id.* at 423 (quoting *Huffman*, 420 U.S. at 604).  However, that is not the case at hand as the only pending proceeding is a divorce case, a domestic relations, matrimonial civil action between the Defendant Father and Plaintiff Jeanne Tamagny.

The third *Sprint* category covers state proceedings "involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions," *Sprint*, 571 U.S. at 78, which includes orders and processes that "lie[] at the core of the administration of a State's judicial system" and through which the state "vindicates the regular operation of its judicial system," *Juidice*, 430 U.S. at 335. In *Juidice*, the Supreme Court held *Younger* abstention applied to a state court contempt proceeding in a suit between private parties because contempt enforcement "stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory." *Id.* at 336 n.12. In *Pennzoil*, the Court held *Younger* applied when the federal suit "challenge[d] . . . the processes by which the State compels compliance with the judgments of its courts." 481 U.S. at 13-14. *See also Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, 27 F.4th 886, 894 (3d Cir. 2022) (holding this category applies to state proceedings where the "substantive outcome had occurred; only enforcement remained," and federal courts must abstain to avoid "imped[ing] that enforcement"); *Rynearson v. Ferguson*, 903 F.3d 920, 926 (9th Cir. 2018) (reasoning this category "is geared to ensuring that federal courts do not interfere in the procedures by which states administer their judicial system and ensure compliance with their judgments"); *Cook v. Harding*, 879 F.3d 1035, 1041 (9th Cir. 2018) (holding this category did

not apply where the state court proceedings "d[id] not relate to the state courts' ability to enforce compliance with judgments already made").

The state domestic relations proceedings here does not fit the *Sprint* categories, so *Younger* is inapplicable. *See Travelers*, 98 F.4th at 1317.

The first category does not apply because the state case is not a criminal prosecution. *Sprint*, 571 U.S. at 72.

The second category does not apply because the domestic relations proceedings are not civil enforcement proceedings brought by state actors against private parties. *See Moore*, 442 U.S. at 423; *Huffman*, 420 U.S. at 604; *Hunter*, 660 F. App'x at 716; *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 463 (3d Cir. 2019) (holding this category inapplicable because the "wife, not the State, began the family court case"). And they are not "state proceeding[s] which in important respects [are] more akin to a criminal prosecution than are most civil cases." *Huffman*, 420 U.S. at 604; *see Sprint*, 571 U.S. at 79; *Cook v. Harding*, 879 F.3d 1035, 1040 (9th Cir. 2018).

The third category does not apply because the domestic relations proceedings do not concern "certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78. The pending divorce action between Defendant Father and Plaintiff Mother Jeanne Tamagny does not "lie[] at the core of the administration of [the] State's judicial

system." _Juidice_, 430 U.S. at 335. Nor does it implicate the state's contempt process, _id._, or other "processes by which the State compels compliance with the judgments of its courts," _Pennzoil_, 481 U.S. at 13-14. Nor does it "ensure that [state] courts can perform their functions"—it is "merely the output of those functions." _Malhan_, 938 F.3d at 463. And it does not concern the state court's "ability to enforce compliance with judgments already made." _Cook_, 879 F.3d at 1041.

In sum, the third category does not apply because the circumstances of these state domestic relations proceedings do not "implicate [the] State's interest in enforcing the orders and judgments of its courts." _Sprint_, 571 U.S. at 72-73.9 To hold otherwise would extend _Younger_ beyond the "exceptional circumstances" that "justify a federal court's refusal to decide a case in deference to the States." _Id._ at 78 (quotations omitted).

Because the state domestic relations proceedings here fall outside the _Sprint_ categories, the _Younger_ abstention doctrine, like the _Rooker-Feldman_ Doctrine, does not apply.

## POINT III:  PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM FOR CONSPIRACY

To prevail on a conspiracy claim under § 1983, a plaintiff must establish that persons acting under color of state law "reached an understanding" to deprive

him/her of their constitutional rights. _Adickes v. S.H. Kress & Co._, 398 U.S. 144, 150-52, (1970). Such rights include, of course, those asserted herein including those protected by the Due Process Clause of the Fourteenth Amendment, such as the right to familial relationship, the right to have proper investigations, the right to have such investigation conducted in a fair and impartial manner and not in a careless, reckless or grossly negligent manner, and the "right of access to the courts," _Monroe v. Beard_, 536 F.3d 198, 205 (3d Cir. 2008). Those rights "assure[] that no person will be denied the opportunity to present to the judiciary allegations concerning violations of ... constitutional rights." _Wolff v. McDonnell_, 418 U.S. 539, 579, (1974).

Although deprivations of the right of access to the courts arise when law enforcement officers conspire to cover up constitutional violations, _see, e.g._, _Colbert v City of Chicago_, 851 F.3d 649 at 657–58 (7th Cir. 2017) (holding that the plaintiff could allege under § 1983 that "the named officers participated in something akin to a 'conspiracy of silence among the officers' in which defendants refuse to disclose which of their number has injured the plaintiff"). A "conspiracy of silence" among officers is actionable as a § 1983 conspiracy because the coordinated officer conduct "impede[s] an individual's access to courts " and renders "hollow" a victim's right to redress in a court of law. _Vasquez v. Hernandez_, 60 F.3d 325, 328–29 (7th Cir. 1995) ("[W]hen police officers conceal

or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged.").

After a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, the plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184–85 (3d Cir. 2009) (citing *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990) ). To show agreement, he must demonstrate that "the state actors named as defendants in the[ ] complaint somehow reached an understanding to deny [the plaintiff] his rights," *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993), and in the absence of direct proof, that "meeting of the minds" or "understanding or agreement to conspire" can be "infer[red]" from circumstantial evidence, *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008). Such circumstantial evidence may include that the alleged conspirators "did or said something ... to create an understanding," "the approximate time when the agreement was made, the specific parties to the agreement[,] the period of the conspiracy, or the object of the conspiracy." *Great W. Mining, v Fox Rothschild*, 615 F.3d 159 at 178–79 (3d Cir 2010) (citations omitted). And in the context of an alleged conspiracy among police officers, it may manifest as "conversations" between officers about the incident, "allegedly distorted" stories that "emerged," an "awareness of conflicting

stories" and "irregularities in the series of official investigations" into the incident. *Hampton v. Hanrahan*, 600 F.2d 600, 627–28 (7th Cir. 1979), *rev'd in part on other grounds by* Hanrahan v. Hampton, 446 U.S. 754 670 (1980).

Because "inferring mental state from circumstantial evidence is among the chief tasks of factfinders," *Kedra v. Schroeter*, 876 F.3d 424, 444 (3d Cir. 2017) (citing *United States v. Wright*, 665 F.3d 560, 569 (3d. Cir. 2012) ), an allegation of conspiracy can only be overcome at summary judgment when "the moving parties' submissions foreclose[ ] the possibility of the existence of certain facts from which 'it would be open to a jury ... to infer from the circumstances' that there had been a meeting of the minds," *Anderson*, 477 U.S. 242 at 249 (1986). Likewise, on Motion to Dismiss, the threshold is even more lenient.

Here, Plaintiff verifies that Defendant Father Scott Tamagny is the Chief of Police in Leonia.  (See Paragraph 11 of Amended Complaint.)  The Court can take judicial notice that Leonia is in the County of Bergen and further, that the Chief of Police is the highest-ranking law enforcement officer in the township of Leonia which is within Bergen County.  Obviously, the State Defendants including the Bergen County Prosecutors Office, are involved in law enforcement within the same County as Defendant Father.  Therefore, at the stage of a Motion to Dismiss when the Court must consider all reasonable inferences in a light most favorable to the Plaintiff, the Plaintiffs have satisfied their burden to establish the allegation of

conspiracy when "the moving parties' submissions foreclose[ ] the possibility of the existence of certain facts from which 'it would be open to a jury ... to infer from the circumstances' that there had been a meeting of the minds," *Anderson*, 477 U.S. at 249. Here, the question for the Court is whether the complaint alleges "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of a claim, then it plausibly pleads a claim. *Twombly*, 550 U.S. at 556, (2007). Plaintiffs need not prove their case at this stage of the proceedings. "In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff." *City of Los Angeles v. Preferred Comm., Inc.*, 476 U.S. 488, 493 (1986). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### POINT IV:  PLAINTIFFS CLAIMS OF STATE DEFENDANTS ACTING IN CONCERT WITH PRIVATE INDIVIDUALS MUST SURVIVE A MOTION TO DISMISS

State Defendants fault Plaintiff for failing to allege granular details of the joint or cooperative action alleged without the opportunity for discovery. But people collaborating to violate rights do not customarily advertise or admit their

collaboration.  They typically act furtively to escape detection and sanctions.  A reasonable inference is that the chief law enforcement officer of a town in Bergen County influenced or acted in concert with another law enforcement agency in Bergen County in order to thwart an investigation into his unlawful acts.  They easily and readily could have facilitated ex parte communications.  Under Rule 12 (b) (6) of the Federal Rules of Civil Procedure, a claim survives dismissal if "plausible on its face." _Bell Atlantic Corp. v. Twombly_, 555 U.S. 544, 555 (2007). Courts rely on their "judicial experience and common sense" in assessing plausibility. _Bistrian v. Levi_, 696 F. 3d 352, 365 (3rd Cir. 2012). The clear motive of Defendant Father would be to stop any investigation or to thwart its progress and given his position in the very same County as Defendants, meets the plausibility threshold of _Twombly_, i.e., that the two acted in cooperation or jointly to unduly coerce or thwart the investigation into Defendant fathers conduct.


## POINT V:  STATE DEFENDANTS DO NOT HAVE QUALIFIED IMMUNITY


State Defendants broadly claim that qualified immunity applies to all named defendants since Plaintiff failed to plead facts "[s]howing (1) that the official violated a statutory or constitutional rights, (2) that the right was 'clearly established' at the time of the challenged conduct." _Ashcroft v. al-Kidd_, 563 U.S.

731, 735 (2011) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This is clearly not the case since Plaintiffs have pled facts with regard to many of the individual Defendants and how they violated Plaintiffs constitutional rights which were clearly established at the time of the challenged conduct.

A right is clearly established if there is either "closely analogous" caselaw establishing that a defendant's conduct was unlawful or "evidence that the Defendant's conduct was so patently violative of the ... right that reasonable officials would know [it to be a violation] without guidance from a court." *Schneyder v. Smith*, 653 F.3d 313, 330 (3d Cir. 2011). The Courts take a "broad view" of what makes a right clearly established, which can be satisfied "even without a precise factual correspondence between the case at issue and a previous case." *Peroza-Benitez v Smith*, 994 F.3d 157 at 166 (3rd Cir 2021)(internal quotation marks omitted). It is enough that "existing precedent ... placed the statutory ... question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, (2011). "[I]f the unlawfulness of the defendant's conduct would have been apparent to a reasonable official based on the current state of the law, it is not necessary that there be binding precedent from this circuit so advising.". *Williams v. Bitner*, 455 F.3d 186, 192 (3d Cir. 2006).

State Defendants assert qualified immunity because, as they allege, Plaintiff do not assert a "recognized constitutional right." (See page 27 of Movants brief.)

However, the Defendant New Jersey Department of Children and Families (DCF), through its Division of Child Protection and Permanency (DCP&P), have a statutory duty to investigate and protect and are statutorily required to investigate all allegations of child abuse and neglect. Under N.J.S.A. 9:6-8.11, the Defendant DCF must "immediately" take such action as shall be necessary to ensure the safety of the child upon receiving a report of alleged abuse or neglect. Indeed, New Jersey takes great pride in being a Safety First State when dealing with children. The Statute provides specifically:

> The safety of the children served **shall be of paramount concern** <u>and the best interests of the child shall be a primary consideration</u>. It is the intent of this legislation to assure that the lives of innocent children are immediately safeguarded from further injury and possible death and that the legal rights of <u>the</u> children are fully protected.

N.J. Stat. Ann. § 9:6-8.8 (West) (Emphasis added)

Specifically, as to State Defendants DCF:

> Upon receipt of any such report, the Division of <u>Child Protection and Permanency</u>, or such another entity in the Department of Children and Families as may be designated by the Commissioner of Children and Families to investigate child abuse or neglect, **<u>shall immediately take such action as shall be necessary to insure the safety of the child</u>** and to that end may request and shall receive appropriate assistance from local and State law enforcement officials.

N.J. Stat. Ann. § 9:6-8.11 (West) (emphasis added)

Prosecutors in New Jersey have a statutory duty to collaborate with the DCF in cases involving child abuse or neglect. N.J.S.A. 9:6-8.36a mandates that the

23

DCF "immediately report all instances of suspected child abuse and neglect" to the county prosecutor. In turn, prosecutors are required to consult with the DCF to determine whether a criminal investigation is necessary and to inform the DCF when criminal proceedings are initiated.

Furthermore, it has long been settled that parents have a liberty interest in the "companionship, care, custody, and management" of their children. _Stanley v. Illinois_, 405 U.S. 645, 651, (1972); _see also Lassiter v. Dep't of Soc. Servs._, 452 U.S. 18, 27 (1981) (such right was "plain beyond the need for multiple citation"). "The Due Process Clause of the Fourteenth Amendment prohibits the government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process." _Croft v. Westmoreland Cnty. Child. & Youth Servs._, 103 F.3d 1123, 1125 (3d Cir. 1997). The right of familial association is well established. As the Supreme Court remarked in _M.L.B. v. S.L.J._, 519 U.S. 102 (1996), "[c]hoices about marriage, family life, and the upbringing of children are among associational rights this Court has ranked as of basic importance in our society, rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." _Id._ at 116.

In _Santosky v. Kramer_, 455 U.S. 745 (1982), the United State Supreme Court pointed out that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because

they have not been model parents...." *Id.* at 753.  Indeed, it is " 'plain beyond the need for multiple citation' that a natural parent's 'desire for and right to the companionship, care, custody, and management of his or her children' is an interest far more precious than any property right." *Id.* at 758–59 (*quoting Lassiter v. Department of Soc. Servs.*, 452 U.S. 18, 27 (1981)).

Finally, in *Troxel v. Granville*, 530 U.S. 57, (2000), the Court reiterated that the parental interest in "the care, custody, and control of their children" is "perhaps the oldest of the fundamental liberty interests recognized by this Court ." *Id.* at 2059. That case reaffirmed the validity of such long-standing precedents as *Meyer v. Nebraska*, 262 U.S. 390, 401 (1923) (right of parents to control education of their children), *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35 (1925) (right to direct upbringing and education of children), and *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944), where the Court said "the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *See also Wisconsin v. Yoder*, 406 U.S. 205, 232–33 (1972) ("primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition," particularly in matters of "moral standards, religious beliefs, and elements of good citizenship").

Thus, whether the right to familial association has been violated requires the court to conduct a fact-intensive balancing test which is not suitable for the Rule 12(b)(6) stage because "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." _Scheuer v. Rhodes_, 416 U.S. 232, 236 (1974).  It is the Defendants burden "of showing that no claim has been presented."  _See_ Hedges, 404 F.3d at 750 (3d Cir. 2005).

Defendant suggests that negligent investigation is not even "cognizable" in a civil rights context.  (See State Defendants Brief at page 27.)  In stating so, State Defendants have obviously overlooked the fact that Plaintiffs allege that State Defendnats conduct was "willful, wanton, reckless or grossly negligent manner and their conduct shocks the conscience."  See para 32 of Amended Complaint. These facts were sufficiently well pleaded to survive a motion to dismiss, as they provide concrete examples and descriptions of the conduct Defendants engage in. _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 555 (2007) (stating complaint "does not need detailed factual allegations," rather needs only to provide the grounds of entitlement to relief").

Plaintiff Courtney Tamagny, was a minor at the time the State Defendants were made aware of the allegations of sexual abuse.  A child has a constitutionally protected liberty interest in a relationship with her parent. _Lowery v. County of_

26

_Riley_, 522 F. 3d 1086, 1092 (10th Cir. 2008) (citing _Roberts v. U.S. Jaycees_, 468 U.S. 609, 617–18, (1984) ("[C]hoices to enter into and maintain certain familial human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty."). This interest is reciprocal to the parents and is grounded in the Fourteenth Amendment's Due Process Clause. _Id._; _Bennett v. Town of Riverhead_, 940 F. Supp. 481, 488–89 (E.D.N.Y.1996) ("This interest is reciprocal in that it belongs to the children as much as it does to parents"). Accordingly, Plaintiff Courtney Tamagny's claims for violation of her right to familial association are identical to Plaintiff Jeanne Tamagny's and are grounded in the material misrepresentations, perjury, failure to investigate, and other intentional actions identified above. They are real claims for which Plaintiffs are entitled to relief.

## POINT VI:  DUTY IS THE CRUX FOR ESTABLISHING A CLAIM

Plaintiff's assert that a duty existed for the State Defendants to act in a prudent manner and certainly not in a willful, wanton, reckless or grossly negligent manner in conducting their investigation.  "[T]he question whether there is a 'duty' merely begs the more fundamental question whether the plaintiff's interests are

entitled to legal protection against the defendant's conduct." *Weinberg v Dinger*, 106 *N.J.* 469 at 481 (1987) (internal quotation and citation omitted). The imposition of a duty thus requires an evaluation and a balancing of the conflicting interests of the respective parties. *Portee v. Jaffee,* 84 *N.J.* 88, 101 (1980). That assessment necessarily includes an examination of the relationships between and among the parties. Also implicated in this analysis is an assessment of the defendant's "responsibility for conditions creating the risk of harm" and an analysis of whether the defendant had sufficient control, opportunity, and ability to have avoided the risk of harm. *Kuzmicz v. Ivy Hill Park Apts., Inc.,* 147 *N.J.* 510, 515 (1997).

Ultimately, the determination of the existence of a duty is a question of fairness and public policy. *Clohesy v Food Circus,* 149 NJ 496, 502 (1997). In fixing the limits of liability as a matter of public policy, courts must draw on "notions of fairness, common sense, and morality." *Hopkins, supra,* 132 *N.J.* at 443. Public policy must be determined in the context of contemporary circumstances and considerations. *See, e.g., Kelly v. Gwinnell,* 96 *N.J.* 538, 544–45, (1984) (noting that in a society growing increasingly intolerant of drunken driving, the imposition of a duty on social hosts "seems both fair and fully in accord with the State's policy"). Thus, " '[d]uty' is not a rigid formalism" that remains static through time, but rather is a malleable concept that "must of

necessity adjust to the changing social relations and exigencies and man's relation to his fellows." *Wytupeck v. Camden,* 25 *N.J.* 450, 462, (1957).

The Court, in its determination whether to impose a duty, must also consider the scope or boundaries of that duty. *See* Kelly, 96 *N.J.* at 552 (observing that determination of the scope of duty in negligence cases "has traditionally been a function of the judiciary"). The scope of a duty is determined under "the totality of the circumstances," *Clohesy, supra,* 149 *N.J.* at 514, and must be "reasonable" under those circumstances, *id.* at 520. Factors to be taken into consideration include the risk of harm involved and the practicality of preventing it. *Id.* at 529–20; *see also* Hopkins, *supra,* 132 *N.J.* at 447 (noting that "[n]egligence has often been defined as the failure to take precautions that cost less than the damage wrought" by the harm). When the defendant's actions are "relatively easily corrected" and the harm sought to be prevented is "serious," it is fair to impose a duty. *Kelly,* 96 *N.J.* at 549–50. In the final analysis, the "reasonableness of action" that constitutes such a duty is "an essentially objective determination to be made on the basis of the material facts" of each case. *Weinberg,* 106 *N.J.* at 484.

Almost 30 years ago, the Courts emphasized the need to protect children from sexual abuse.

> There can be no doubt about the strong policy of this State to protect children from sexual abuse and to require reporting of suspected child abuse. *N.J.S.A.* 9:6–8.10. *N.J.S.A.* 9:6–8.8 defines the purpose of the reporting requirement. It is

to provide for the protection of children under 18 years of age who have had serious injury inflicted upon them by other than accidental means. It is the intent of this legislation to assure that the lives of innocent children are immediately safeguarded from further injury and possible death and that the legal rights of such children are fully protected.

See *F.A. by P.A. v. W.J.F.*, 280 *N.J. Super.* 570, 572 (App. Div.1995).

Here, what is clear is that there is a significant public policy to prevent, detect, and

prosecute child abuse.  As stated in our Statutes:

The safety of the children served shall be of paramount concern <u>and the best interests of the child shall be a primary consideration</u>. It is the intent of this legislation to assure that the lives of innocent children are immediately safeguarded from further injury and possible death and that the legal rights of <u>the</u> children are fully protected.

N.J. Stat. Ann. § 9:6-8.8 (West)

It is also fair and reasonable to impose a duty on those charged with conducting an

investigation into child abuse to do so in a prudent and careful manner and

certainly not in a willful, wanton, reckless, or grossly negligent manner. And

finally, the State legislature has determined that the State Defendant have such a

duty by statutory enactment.

## POINT VII:  STATE DEFENDANTS ARE LIABLE ON STATE-CREATED DANGER CLAIMS

Plaintiffs have similarly sufficiently alleged a claim of state-created danger.

A state actor may be held liable under § 1983 for the acts of third parties under two

exceptions: "(1) the "special relationship" exception; and (2) the "danger creation" exception." *Morse v Lower Merion Sch Dist.*, 132 F 3d 902, 907 (3rd Cir 1997). To state a claim under the "danger creation" exception a plaintiff must show:

> (1) the charged state actors created the danger or increased the plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited and specifically definable group; (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the defendants acted recklessly in conscious disregard of that risk; and (6) the conduct, when viewed in total, shocks the conscience.

> *Id.* at 1182-83.

Here, Plaintiffs' Complaint sufficiently alleges these elements: Plaintiffs allege that Defendants increased Plaintiff Courtney's Tamagny's vulnerability to abuse, by falsifying reports, refusing to investigate, and submitting perjurious statements. Plaintiffs have further alleged that Defendants were aware of the risk due to reports of harm about the minor children, and that Defendants actively intervened to place the minor children into the hands of the abuser despite their protestations and statements of fear. This conduct was directed specifically at the then minor Courtney Tamagny and her siblings.

In analyzing the state created danger exception, the Supreme Court has emphasized that the "touchstone of due process" is protection against arbitrary government action.    *Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998). Government action is "arbitrary in the constitutional sense" when it is "so

egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.  Id at 847, n.8.  In situations in which government officials have time to make deliberate decisions as here, then deliberate indifference is enough to prove shock the conscience.  The Court has defined deliberate indifference as requiring a "conscious disregard of a substantial risk of serious harm."  _Vargas v. City of Philadelphia_, 783 F.3d 962, 973–74 (3d Cir. 2015).  That is, "deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known."  _Phillips v. Cty. of Allegheny_, 515 F.3d 224, 238 (3d Cir. 2008).  Here there was deliberate action, or inaction, and certainly the risk of harm was known to the State Defendants if indeed they were reckless in their investigations of sexual abuse and a pedophile was allowed to be free to continue his pattern of abuse.

There is a reason that the Legislature has created a

Upon receipt of any such report, the Division of Child Protection and Permanency, or such another entity in the Department of Children and Families as may be designated by the Commissioner of Children and Families to investigate child abuse or neglect, shall immediately take such action as shall be necessary to insure the safety of the child and to that end may request and shall receive appropriate assistance from local and State law enforcement officials. N.J. Stat. Ann. § 9:6-8.11 (West)

Further, our Statutes:

The safety of the children served shall be of paramount concern and the best interests of the child shall be a primary consideration. It is the intent of this legislation to assure that the lives of innocent children are immediately

32

safeguarded from further injury and possible death and that the legal rights of <u>the</u> children are fully protected.

N.J. Stat. Ann. § 9:6-8.8 (West)

These allegations meet the "danger creation" exception. <u>Malik</u>, 191 F.3d at 1310, 1316; <u>Hardwick</u>, 844 F.3d at 1116.

These allegations similarly satisfy Plaintiffs' burden at this stage of proceedings as to the equal protection claim regarding the then minor Courtney Tamagny. A "class-of-one" theory of equal protection may proceed "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000). "The paradigmatic 'class of one' case, [ ] sensibly conceived, is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen." <u>Lauth v. McCollum</u>, 424 F.3d 631, 633 (7th Cir. 2005). A plaintiff must demonstrate that he was treated differently than similarly situated others, that this treatment was without rational basis. <u>Kansas Penn Gaming, LLC v. Collings</u>, 656 F.3d 1210, 1216 (10th Cir. 2011).

Here, Plaintiff alleges that State Defendants—who are county and state personnel tasked with investigating child abuse allegations—failed to investigate, made substantial omissions in official reports, and provided false, fraudulent, and

perjurious statements to a court for the purposes of protecting "one of their own" or affecting a particular child custody determination. These allegations more than sufficiently show dissimilar treatment without rational basis. Accordingly, State Defendants Motion should be denied.

Plaintiffs allege that the State Defendants are liable under a state-created danger theory because their actions, or inactions, harmed the minor children and failed to protect them.  Generally, the Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals. *See DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 198–200 (1989). However, the Courts have explicitly recognized two exceptions to this general rule. First, the state has a duty to protect or care for individuals when a "special relationship" exists.  Second, the state has a duty when a "state-created danger" is involved. *See Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 907 (3d Cir.1997).

In *Kneipp v. Tedder,* 95 F.3d 1199, 1201 (3d Cir.1996), the Courts first adopted the state-created danger theory as a mechanism by which plaintiffs may establish constitutional violations under 42 U.S.C. § 1983 and held that liability may attach where the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process. *Id.*

at 1205; *see also Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.,* 318 F.3d 473, 478 (3d Cir.2003).

To prevail on a state-created danger claim in the Third Circuit, a plaintiff must prove the following four elements:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland County,* 443 F.3d 276, 281 (3d Cir. 2006)

Plaintiffs maintain that the State Defendants created a risk of Plaintiff Courtney Tamagnys abuse and that of her siblings by, for example, holding themselves out as a source of aid to the Tamagny children and Mother, cutting off other possible avenues of help, undertaking an assessment of the Tamagny children without proper training, improperly evaluating his risk, and deciding not to do anything to protect them. A reasonable jury could find (1) that State Defendants acted with the requisite degree of culpability, (2) that the State Defendants "create[d] an opportunity that otherwise would not have existed for [harm] to occur." *Smith II,* 430 F.3d at 153.

# POINT VIII:  DEFENDANTS ARE NOT IMMUNE UNDER THE NEW JERSEY TORTS CLAIMS ACT

None of the provisions of the New Jersey Tort Claims Act shield the State Defendants from liability because, any immunity "is subject to an outer limit" and "willful misconduct" by a public employee is "expressly excluded from the scope of the [TCA's] immunity." *Tice v. Cramer*, 133 *N.J.* 347, 375 (1993) (citing *N.J.S.A.* 59:3–14a). "[A] public employee guilty of outrageous conduct cannot avail himself of the limitations as to liability and damages contained in this [A]ct." *N.J.S.A.* 59:3–14. Willful misconduct "is not immutably defined but takes its meaning from the context and purpose of its use." *Fielder v. Stonack*, 141 *N.J.* 101, 124 (1995). In *Fielder,* the Court defined what constitutes "willful misconduct" in a police pursuit context: "[W]illful misconduct is ordinarily limited to a knowing violation of a specific command by a superior, or a standing order, that would subject that officer to discipline." *Id.* at 125.

For purposes of the Torts Claims Act ("TCA"), willful misconduct has been defined as the "commission of a forbidden act with actual knowledge that the act is forbidden." *Id.* at 470, 669 *A.*2d 845 (citing *Marley v. Borough of Palmyra,* 193 *N.J. Super.* 271, 294–95, (Law Div.1983)). It is conduct much more egregious than ordinary negligence. *Fielder, supra,* 141 *N.J.* at 123–27, 661 *A.*2d 231; *Kollar, supra,* 286 *N.J. Super.* at 470, 669 *A.*2d 845.

On a Motion to Dismiss, considering the pleadings in a light most favorable to Plaintiff, the Court must find that Defendants conduct rises to the level of willful misconduct negating the applicably of the Tort Claims Act.    The Complaint and Amended Complaint expressly states that the actions of the Defendants were grossly negligent.    See paragraph 32 of Plaintiff's Amended Complaint.  As such, the Tort Claims Act does not bar acts of gross neglect.

Public employees do not enjoy immunities as a public entity.  "Unlike the immunity of public entities, the immunity of public employees under the Act is the exception rather than the rule." _Fielder_, 141 N.J. at 118. The TCA states: "Except as otherwise provided by this act, a public employee is liable for injury caused by this act or omission to the same extent as a private person." N.J.S.A. 59:3-1(a).  As such, State Defendants' assertion of immunity under state law must be rejected.

The Verified allegations of the Complaint and Amended Complaint are that the State Defendants were grossly negligent and acted in a manner that is exempt from the immunities afforded by the Tort Claims Act.  When read in a light most favorable to Plaintiffs, the decisions "shock the conscience" and are grossly negligent barring the Defendant from asserting such immunity.  The Amended Complaint suggests the outrageous nature of the State Defendants conduct which overwhelmingly supports a finding that the Tort Claims Act is inapplicable.

Immunity is applicable only if the employee acts in good faith in the execution or enforcement of any law. State Defendants were grossly negligent is a further exception to any claim for immunity. N.J.S.A. 2A:53A-7(c), states in pertinent part:

> Nothing in this section shall be deemed to grant immunity to: (1) any nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes, or its trustee, director, officer, employee, agent, servant or volunteer, causing damage by a willful, wanton or grossly negligent act of commission or omission....

"[G]ross negligence is an indifference to another by failing to exercise even scant care or by thoughtless disregard of the consequences that may follow from an act or omission." Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 364-65 (2016).

Here, when considering the facts in a light most favorable to the Plaintiffs, the facts support a finding of gross negligence by the State Defendants. Plaintiffs maintain these State Defendants were grossly negligent. See para 26 to 33 of Amended Complaint. In light most favorable to the Plaintiffs and giving them all reasonable inferences, there is ample support to withstand a Motion to Dismiss. It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant **fair notice** of

what the plaintiff's claim is and the grounds upon which it rests." _Baldwin Cnty._ _Welcome Ctr. v. Brown_, 466 U.S. 147, 149–50 n. 3 (1984) (Emphasis added, quotation and citation omitted). A district court, in weighing a motion to dismiss, asks " 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.' " _Twombly_, 550 U.S. at 583.

## CONCLUSION

Based on the foregoing, it is respectfully requested that the Court deny the State Defendants Motion to Dismiss.

Dated: July 21, 2025

_Demetrios K. Stratis_

DEMETRIOS K. STRATIS, ESQ.

CERTIFICATE OF SERVICE

I hereby certify that on this July 21, 2025, I caused a true and correct copy of the foregoing Plaintiffs Brief in Opposition to State Defendants Motion to Dismiss to be served via the Court's CM/ECF electronic filing system, which automatically sends notice of filing to all counsel of record who have appeared in this matter.

CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.2(b), I hereby certify that this brief complies with the page limit and formatting requirements set forth by the Local Rules of the United States District Court for the District of New Jersey. The text is double-spaced, using a 14-point proportionally spaced font, 9038 words, and the length of the memorandum does not exceed 40 pages.

Dated: July 21, 2025

*Demetrios K. Stratis*

DEMETRIOS K. STRATIS, ESQ.