<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| COURTNEY TAMAGNY, JEANNE TAMAGNY,<br><br>  Plaintiffs,<br><br>v.<br><br>DIVISION OF CHILD PROTECTION AND PERMANENCY, *et al.*,<br><br>  Defendants. | Civil Action No. 25-732 (SDW) (CF)<br><br>**OPINION**<br><br>March 23, 2026 |

**WIGENTON, District Judge.**

Before this Court is Defendants' the State of New Jersey, the New Jersey Department of Children and Families, the Division of Child Protection and Permanency, the Bergen County Prosecutor's Office, Christine Norbut Beyer, Joanna Holota, and Matthew Zablocki (collectively, "State Defendants") Motion to Dismiss, (D.E. 61 ("Motion")), Plaintiffs' Courtney and Jeanne Tamagny's Second Amended Complaint, (D.E. 54 ("Second Amended Complaint" or "SAC")), pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).[1]  Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and § 1367(a).  Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78 and Local Civil Rule 78.1.  For the reasons stated herein, the Motion is **GRANTED**.

---

[1] Defendants Christine Norbut Beyer, Joanna Holota, and Matthew Zablocki are sued both in their individual and official capacities.  Defendants Holota and Zablocki are investigators for the Division of Child Protection and Permanency ("DCPP") and the Bergen County Prosecutor's Office, respectively. (SAC at 4–5.)  Defendant Beyer is the Department of Children and Families ("DCF") Commissioner.  (*Id.* at 4.)

1

I.    FACTUAL AND PROCEDURAL BACKGROUND

This case concerns allegations of sexual abuse and assault spanning the course of several years.    Plaintiff Courtney Tamagny ("Courtney") claims she—along with her sisters—were victims of sexual assault and abuse at the hands of her father, Defendant John Scott Tamagny ("John"), and the family's neighbor, Defendant Keith Slevin ("Slevin").    (SAC at 6–7, 9, 11.) Relevant to this Motion, Plaintiff alleges her therapist referred her case to the Division of Child Protection and Permanency ("DCPP"), but "State Defendants took no action to protect" her or her siblings.    (*Id.* ¶¶ 16(r)–(s).)    More specifically, Plaintiff takes issue with the manner in which State Defendants conducted their investigations into the sexual abuse reports.    (*Id.* ¶ 16(t).)

Plaintiff Courtney Tamagny initiated this lawsuit on January 28, 2025.    (D.E. 1.)    On March 19, 2025, Plaintiff Jeanne Tamagny ("Jeanne") joined the lawsuit and the Complaint was amended.[2]    (D.E. 23.)    On July 22, 2025, Plaintiffs filed their Second Amended Complaint with leave of court, which is the operative pleading at this juncture.    (D.E. 54.)    Relevant to this Motion, only Counts I through IV of the Second Amended Complaint apply to State Defendants.

Count I alleges that by conducting sham investigations, State Defendants interfered with and violated Plaintiffs' Fourteenth Amendment rights to familial association and to parent pursuant to 42 U.S.C. §§ 1981 and 1983.    (SAC at 18–20.)    Plaintiffs assert that State Defendants conspired with John and Slevin to "unlawfully misrepresent, make false statements and reports, . . . use[] trickery, fabrication and or [sic] false testimony or evidence," in violation of 42 U.S.C. §§ 1985 and 1986 in Count II.    (*Id.* at 20–23.)    In Count III, Plaintiffs claim violation of their due process and equal protection rights under the Fourth, Eighth, and Fourteenth Amendments.    (*Id.* at 23–24.)

---

[2] Plaintiff Jeanne Tamagny and Defendant John Tamagny are also parties in a pending state court divorce proceeding.    (D.E. 69 ("Opp. Br.") at 19.)

2

Lastly, in Count IV Plaintiffs allege that State Defendants conspired to violate the rights asserted in Count III.  (*Id.* at 24–26.)

State Defendants moved to dismiss Plaintiffs' Second Amended Complaint on August 13, 2025.  (D.E. 61.)  The parties timely completed briefing.  (D.E. 69, 72, 75.)

## II.    LEGAL STANDARD

### A.  Rule 12(b)(1)

Rule 12(b)(1) permits a defendant to move to dismiss for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  When a defendant moves to dismiss on Eleventh Amendment sovereign immunity grounds, that motion is analyzed under Rule 12(b)(1).  *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) (stating that the defendants' motion for summary judgment could properly be considered a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) because "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction").

A district court considering a Rule 12(b)(1) motion must first determine whether the motion presents a facial or factual attack, as that distinction determines how the pleading is reviewed. *Long v. Southeastern Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018). A facial attack "only consider[s] the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  If, however, the defendant mounts a factual attack by contesting the truth of the jurisdictional allegations, then the court "need not treat the allegations as true, and a plenary trial is held to resolve any material factual disputes."  *Long*, 903 F.3d at 320.

### B.  Rule 12(b)(6)

3

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The pleading should "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). The analysis involves a two-step approach. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). First, the Court parses between the factual and legal elements of a claim, treating "all of the complaint's well-pleaded facts as true," but disregarding any legal conclusions. *Id.*; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Second, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

When a plaintiff pleads factual content that enables the Court to draw "the reasonable inference that the defendant is liable for the misconduct alleged," a claim has facial plausibility. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the

pleader is entitled to relief" as required by Rule 8(a)(2).  *Id.*  The Court considers "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Belichick*, 605 F.3d at 230 (citation omitted).

### III.  DISCUSSION

In support of their Motion, State Defendants argue that this Court lacks subject matter jurisdiction because the Eleventh Amendment applies.  (D.E. 61-1 ("Mov. Br.") at 11, 24.)  This Court addresses the merits of that argument first and then turns to State Defendants' remaining arguments about the application of the *Rooker-Feldman*[3] and *Younger*[4] doctrines and Plaintiffs' failure to plead that Beyer, Holota, and Zablocki are liable on an individual basis.

#### A.  Applicability of the Eleventh Amendment

State Defendants argue the Eleventh Amendment's doctrine of sovereign immunity precludes Plaintiff from obtaining monetary relief.  (D.E. 61-1 ("Mov. Br.") at 25.)  Additionally, because a suit against a state agency or official in his official capacity is in essence a suit against the State, State Defendants contend they are not "persons subject to suit" as required by 42 U.S.C. § 1983.  (Mov. Br. at 27.)  Plaintiffs did not respond to these arguments, effectively conceding the Eleventh Amendment bars the claims against State Defendants.  *See Winfield Scott Tower Urban Renewal LP v. Luciani*, No. 23-133, 2024 WL 4570908, at *3 (D.N.J. Oct. 24, 2024) (granting a 12(b)(1) motion premised on Eleventh Amendment immunity unopposed by the plaintiff). Notwithstanding, this Court addresses the merits of State Defendants' arguments.

---

[3] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

[4] *Younger v. Harris*, 401 U.S. 37 (1971).

Plaintiffs cannot properly assert a Section 1983 claim against State Defendants, who are not properly "persons" subject to suit given the application of the Eleventh Amendment. Section 1983 provides a cause of action against "[e]very person" who acts "under color of any statute, ordinance, regulation, custom, or usage," to subject or cause to be subjected any citizen to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "A plaintiff seeking relief under 42 U.S.C. § 1983 must establish that the individual or entity who allegedly committed the constitutional violation is a 'person' for the purposes of § 1983." *Karns v. Shanahan*, 879 F.3d 504, 519 (3d Cir. 2018).

However, "'States or governmental entities that are considered "arms of the State" for Eleventh Amendment purposes' are not 'persons' under § 1983." *Id.* (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989)). State agents and instrumentalities "should be 'treated as an arm of the State'" depending on the "nature of the entity created by state law." *Gonzalez v. New Jersey Dep't of Child. & Fams.*, 545 F. Supp. 3d 178, 201 (D.N.J. 2021) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429–30 (1997)). Where a judgment against a state entity "would have essentially the same practical consequences as a judgment against the State itself," the entity can be characterized as an "arm of the state" for purposes of Eleventh Amendment immunity. *Bowers v. Nat'l Collegiate Athletic Collegiate Ass'n*, 475 F.3d 524, 545–46 (3d Cir. 2007) (quoting *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989)).

Here, Defendants the State of New Jersey, the New Jersey Department of Children and Families ("DCF"), and DCPP are "arms of the state" and thus not "persons" under § 1983. *See Gonzalez*, 545 F. Supp. 3d at 201–02 (granting summary judgment to the DCF and DCPP after holding they were immune from § 1983 liability because they are arms of the state). The same holds true for the BCPO. *See Est. of Bardzell v. Gomperts*, 515 F. Supp. 3d 256, 267–69 (D.N.J.

2021) (acknowledging that while the Third Circuit has not adopted a "bright-line rule that county prosecutors are always entitled to immunity when acting in a law enforcement capacity," the precedent in this district has largely held that "county prosecutors, when pursuing their core functions, are entitled to Eleventh Amendment immunity," collecting cases, and concluding the BCPO is an arm of the state); *V.R. v. Bergen Cnty. Prosecutor's Off.*, No. 23-20605, 2024 WL 3874052, at *5–6 (D.N.J. (holding the BCPO acted as an arm of the state). The claims against Beyer, Holota, and Zablocki are similarly barred by the Eleventh Amendment. *See Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself." (citation omitted)).

In sum, Plaintiffs' claims against the State, DCF, DCPP, the BCPO, and Beyer, Holota and Zablocki—in their official capacities—are barred by the doctrine of sovereign immunity. Only Plaintiffs' claims against Beyer, Holota, and Zablocki in their individual capacities remain.

### B. Applicability of the *Younger* Abstention Doctrine[5]

State Defendants argue that to the extent the state court custody litigation is ongoing, the *Younger* abstention doctrine applies and precludes this Court from entertaining the instant lawsuit. (D.E. 61-1 at 30–31.) The *Younger* doctrine "requires federal courts to abstain from deciding cases that would interfere with certain ongoing state proceedings." *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 461 (3d Cir. 2019). Namely, federal courts are to abstain from hearing the following "exceptional" proceedings: (1) ongoing state criminal prosecutions, (2) certain civil enforcement

---

[5] The *Rooker-Feldman* doctrine stands for the principle that "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great Western Mining & Mineral Co. v. Fox Rothschild*, 615 F.3d 159, 165 (3d Cir. 2010). Given that the state court divorce proceeding is ongoing, (Opp. Br. at 18), this Court declines to address State Defendants' argument regarding the applicability of said doctrine and will only consider the merits of State Defendants' *Younger* doctrine argument.

proceedings, and (3) pending civil proceedings involving orders "uniquely in furtherance of [a] state courts' ability to perform [its] judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). Only when faced with one of these three types of cases do courts turn to consider the factors enumerated in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982). *Malhan*, 938 F.3d at 462 (citing *Sprint*, 571 U.S. at 81–82).

Neither of the first two categories is at issue here and State Defendants do not argue otherwise. Instead, State Defendants rely on *Silver v. Court of Common Pleas of Alleghany County*, 802 F. App'x 55 (3d Cir. Feb. 6, 2020) to support their argument that the state court divorce proceeding falls within *Sprint*'s third category as it involves orders "uniquely in furtherance" of the state court's function of "promoting and protecting the best interests of a child." (Mov. Br. at 31.)

*Silver* is distinguishable, however. Following a twenty-three-day-trial in "an exceptionally contentious child custody case," the state court entered an initial order preventing both ex-spouses and their counsel from publicly discussing the matter. 802 F. App'x at 56–57. Between the verdict and initial order, the child's mother—Susan Silver—sued in federal court. *Id.* at 57. Following the Court of Common Pleas for Allegheny County's issuance of a final order governing the parties' and their counsel's conduct, Silver and her attorneys appealed to the Pennsylvania Superior Court on constitutional grounds, while simultaneously seeking leave to amend their complaint in the federal court action. *Id.* The district court denied Silver and counsel relief, relying in part on *Younger* abstention. *Id.* The Pennsylvania Superior Court rejected Silver's challenge, but the Supreme Court of Pennsylvania granted review on "the *same* federal question [Silver and counsel]

8

attempted to litigate in the District Court." *Id.* (emphasis added). Yet Silver and counsel still sought review of the district court's action by appealing to the Third Circuit. *Id.* at 57–58.

On appeal, the Third Circuit held the district court properly relied on *Younger* abstention. *Id.* at 59. The court distinguished *Malhan* and concluded the Court of Common Pleas's order governed the parties' post-judgment conduct to protect and promote the best interests following a custody battle. *Id.* at 58–59. Applying the *Middlesex* factors, the court noted the state court proceedings were ongoing, implicated "important state interests," and afforded Silver an adequate opportunity to raise federal claims, particularly since "the Supreme Court of Pennsylvania granted a discretionary appeal to address the very constitutional issues" she brought in federal court. *Id.* at 58–59.

Unlike in *Silver*, Plaintiffs are not asking this Court to adjudicate claims identical or even remotely similar to those being adjudicated in the state trial court. The state court proceeding deals with domestic relations, an area that is typically of state concern, while the claims before the undersigned sound in unrelated torts—claims which Plaintiffs could not properly bring before the state court. The parties to each respective action also differ. Courtney is not a party to the divorce proceeding and, in this case, Plaintiffs allege a widespread scheme involving not just Mr. Tamagny, but also other Defendants who are not parties to the state court case. Further, this Court is not aware of any order issued by the state trial court comparable to that issued in *Silver* or those meriting abstention in other cases. *See, e.g.*, *Juidice v. Vail*, 430 U.S. 327, 328–30, 338–39 (1977) (holding district court erred by not finding the *Younger* abstention doctrine applied where a state trial court issued a contempt order against the defendant, who subsequently initiated an action to assert claims that could have been asserted as defenses in the state court matter, in federal court). Thus, the *Younger* abstention doctrine is inapplicable.

9

**C. Claims Against Beyer, Holota, and Zablocki in their Individual Capacities**

At this juncture the only remaining claims are those brought against Defendants Beyer, Holota, and Zablocki in their individual capacities. Those claims are dismissed for failure to state a claim upon which relief can be granted.

State Defendants argue that Plaintiffs' Second Amended Complaint fails to demonstrate "that the individual State Defendants were involved in any constitutional violations or wrongdoings, beyond mere conclusory allegations." (Mov. Br. at 32.) Because Plaintiffs fail to demonstrate an actual § 1983 violation, State Defendants contend, it follows that their conspiracy claims similarly fail. (*Id.* at 33–34.) Lastly, State Defendants claim the doctrine of qualified immunity applies to Plaintiffs' claims against Beyer, Holota, and Zablocki in their individual capacities. (*Id.* at 39.)

To establish a prima facie § 1983 claim, a plaintiff must demonstrate that "(1) a person deprived him or her of a federal right; and (2) that person acted under color of state law." *Batista v. City of Perth Amboy*, No. 15-2833, 2020 WL 1329980, at *8 (D.N.J. Mar. 23, 2020) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995)). Courts have discretion to analyze these factors in the order they deem fit. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Qualified immunity "protects government officials from insubstantial claims," and serves to "shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Mammaro v. New Jersey Div. of Child Protection & Permanency*, 814 F.3d 164, 168 (3d Cir. 2016) (quoting *Pearson*, 555 U.S. at 231). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). To overcome qualified immunity, a plaintiff must plead facts "showing (1) that the official violated a statutory or

10

constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Mammaro*, 814 F.3d at 168–69 (quoting *al-Kidd*, 563 U.S. at 735).

Here, Plaintiffs maintain that their Fourteenth Amendment rights to familial association were violated because State Defendants failed to conduct a proper investigation.[6] (Opp. Br. at 29–30.) While the due process clause of the Fourteenth Amendment guarantees fair process and "heightened protection against government interference with certain fundamental rights and liberty interests," *Washington v. Glucksberg*, 521 U.S. 702, 719–20 (1997), "there is no constitutional right to the investigation of another," *Lee v. City of Philadelphia*, 627 F. App'x 378, 383 (3d Cir. 2003). *See also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Thus, it follows that Plaintiffs have not pled the first element of a § 1983 claim. *See Batista*, 2020 WL 1329980 at *9 (holding the plaintiff failed to allege a cognizable § 1983 claim because "there is no private constitutionally protected interest to an investigation or prosecution of another individual"); *Fuchs v. Mercer Cnty.*, 260 F. App'x 472, 475 (3d Cir. 2008) (affirming district court's rejection of a plaintiff's Fourteenth Amendment due process claim challenging the manner in which a police officer conducted an investigation).

Even if Plaintiffs had stated a viable claim, they did not plead facts sufficient to overcome qualified immunity. The Second Amended Complaint contains only speculation and little facts pertinent to the question of whether Beyer, Holota, and Zablocki violated a constitutional right. Additionally, because there is no private constitutional right to an investigation, Plaintiffs have failed to identify what clearly established right Defendants Beyer, Holota, and Zablocki violated, which is detrimental to their case. *See Mammaro*, 814F.3d at 171 ("[C]aseworkers are protected

---

[6] Plaintiffs also raise a state-created danger argument in their Opposition Brief, which this Court declines to address given Plaintiffs' failure to plead this in their Second Amended Complaint.

11

by qualified immunity unless clearly established law puts them on notice that their conduct is a violation of the Constitution."); *Kelly v. Pier*, No. 16-3417, 2017 WL 3397030, at *13 (D.N.J. Aug. 8, 2017) (holding the state defendants were entitled to qualified immunity after finding they did not violate a clearly established right where "DCPP investigations are not part and parcel of the right to 'family integrity' provided by the Fourteenth Amendment"). Given that Plaintiffs have failed to overcome qualified immunity, it follows that all claims against Defendants Beyer, Holota, and Zablocki in their individual capacities are dismissed.

IV.    **CONCLUSION**

For the reasons stated above, State Defendants' Motion is **GRANTED**. Plaintiffs shall have thirty (30) days to file an amended complaint. An appropriate order follows.

_____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:    Parties
       Cari Fais, U.S.M.J.

12